## COMMONWEALTH vs. RAFAEL M. DAVILA.

Hampden.  December 8, 1983. — February 16, 1984.

Present: GRANT, DREBEN, & SMITH, JJ.

*Identification. Practice, Criminal,* Identification of defendant in court-room, Presence of defendant, Sentence, Duplicitous punishments. *Due Process of Law,* Presence of defendant in courtroom. *Homicide.*

A defendant being tried for murder and arson was not entitled to required findings of not guilty by reason of the Commonwealth's failure to have any witness identify the defendant in court as the same person referred to in the testimony, where the evidence was sufficient to satisfy the jury, beyond a reasonable doubt, that the defendant was the individual whom the identifying witness described as having paid him to set the fire in which the victims were killed. [512-513]

A criminal defendant's absence from the courtroom during a roll call of the sequestered jurors, prior to the start of the second day of their deliberations, did not entitle him to a mistrial. [513-515]

The judge at a criminal trial did not err in imposing three consecutive life sentences on a defendant convicted on three murder indictments. [515]

INDICTMENTS found and returned in the Superior Court Department on September 9, 1981, and October 16, 1981.

The cases were tried before *Cross, J.*

*Arthur D. Serota* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant appeals from seven convictions of murder in the second degree and from a conviction of arson. He argues errors allegedly committed by the trial judge in relation to the following matters: (a) denial of his motion for required findings of not guilty;[1] (b) denial of his

---

[1] The defendant filed one motion that encompassed all the indictments.

motion for a mistrial; and (c) imposition of three consecutive sentences for murder in the second degree. We affirm the judgments.

1. *Denial of motion for required findings of not guilty.* The defendant assigns as error the judge's refusal to grant his motion for required findings of not guilty on all the indictments.[2] The motion is based on the ground that the Commonwealth failed to identify the defendant, sitting in the courtroom, as the individual mentioned in the testimony. As to the defendant's contention, it is basic law and does not require any citation that an essential element to be proved by the Commonwealth is that the individual who appears before the court as the defendant is the same person who is the subject of the indictment or complaint then on trial and the same person referred to in the evidence. Proof of the identity of the person who committed the offense may be established in a number of ways and "[i]t is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." *Commonwealth* v. *Cavanaugh,* 7 Mass. App. Ct. 33, 36 (1979).

In reviewing the defendant's claim, we view the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Burbank,* 388 Mass. 789, 797 (1983). All the indictments stemmed from a fire which occurred on August 24, 1981, in Holyoke. There was no dispute at the trial that the fire that caused the seven deaths was set by one Adam Davila (Adam) and one Luis Centeno. The Commonwealth did not contend that the defendant was present at the time the fire was set; its theory was that he paid Adam and Centeno to set the blaze. Adam was the principal witness against the defendant. The transcript of Adam's testimony and of the other Commonwealth witnesses fails to support the defendant's contention that the evidence was in-

---

[2] The judge did reduce the murder indictments from first degree to second degree murder.

sufficient to permit the jury to infer that the defendant sitting in the courtroom was the "Rafael" or "Rafael Davila," to whom the witnesses referred. Adam testified that he knew "Rafael Davila" prior to the date of the fire, that he had been in "Rafael Davila's" apartment and that "the defendant" wanted him to burn the building where "the defendant" lived. At one point when Adam used the word "Raphael," the prosecutor then asked, "By Rafael, are you referring to the defendant and Adam responded, "Yes."[3] We are satisfied from our review of the record that the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to satisfy the jury, beyond a reasonable doubt, that the defendant was the individual described by Adam as the person who had paid him to set the fire.[4] We reiterate, however, the words of Chief Justice Hale in *Commonwealth* v. *Sheehan*, 5 Mass. App. Ct. 754, 763 n.8 (1977), wherein he stated, "[W]e consider that the preferable practice is for the prosecutor to have the record show specifically that the person [on trial] is the one referred to by the identifying witness."

2. *Denial of motion for mistrial.* During the trial and deliberations, the jury were sequestered. Each morning prior to the start of the day's testimony or deliberations the roll of the jurors was called. Prior to the start of deliberations on the second day, the roll was called but because of an administrative error the defendant was absent. After

---

[3] Some of the Commonwealth witnesses testified in corroboration of Adam's testimony. They specifically identified the defendant as the person who was the subject of their testimony.

[4] The defendant also argues that, because he was sitting beside an interpreter during the trial, jurors were unable to determine which individual was the defendant. The argument is without merit. During the course of the trial a roll call was made of the jurors prior to the start of the day's testimony. See part 2 of this opinion. The defendant was included in the roll call and responded when his name was called. Also witnesses other than Adam specifically pointed to the defendant at the appropriate times during the course of their testimony. Finally, the jurors were aware that the defendant could not speak or understand English. They could observe one individual repeating the testimony to the other and thus could reasonably infer which individual was the interpreter and which was the defendant.

the jurors and judge had left the courtroom, defense counsel went to the judge's lobby and moved for a mistrial because of the defendant's absence. The judge denied the motion. The defendant argues that his absence from the courtroom during the roll call violated art. 12 of the Massachusetts Declaration of Rights and the Sixth and Fourteenth Amendments to the Constitution of the United States. There was no error.

At the time of the defendant's absence the evidentiary aspect of the trial was over, all that remained was the return of the verdict. Therefore, there was no violation of the confrontation clause of the Sixth Amendment or of art. 12 of the Declaration of Rights. The defendant also claims that the due process clause of the Fourteenth Amendment was violated and that the common law also required his presence. We disagree with these contentions. It was not required, in the circumstances, that a jury be subject to a roll call before they resumed deliberations.[5] The taking of the roll call here was nothing more than an administrative act that did not require the presence of the defendant. See *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 399 n.3 (1975). There is nothing in the Fourteenth Amendment or the common law to the contrary. The defendant contends, however, that his "conspicuous absence" permitted the jury to draw unfavorable inferences against him. We note that no objection was made by defense counsel before, during, or immediately following the roll call, which leads us to question how conspicuous the defendant's absence actually was. In any event, defense counsel could have requested an instruction to the jury from the judge in regard to the defendant's absence. He failed to do so, undoubtedly

---

[5] As previously noted, the jurors were sequestered during the trial and deliberations. If they had not been sequestered and if the judge had permitted them to separate either after the submission of the case, or after commencement of deliberations, Mass.R.Crim.P. 20(e)(3), 378 Mass. 889 (1979), would have required that they "reconvene in the courtroom before retiring for consideration of their verdict." In that instance a roll call might indeed have been warranted.

for sound tactical reasons. Nonetheless, it is preferable for a defendant to be present whenever the jury come into the courtroom, whether there is a roll call or not, unless he has waived his right to be present.

3. *Imposition of consecutive life sentences as error.* The defendant was sentenced to three consecutive life sentences on three second degree murder convictions.[6] The defendant argues that the imposition of consecutive life sentences on the second degree murder convictions was error. He bases his argument on the decisions of the Supreme Judicial Court in *Commonwealth* v. *Stewart,* 375 Mass. 380, 390-393 (1978), and *Commonwealth* v. *Wilson,* 381 Mass. 90, 123-126 (1980), where the court held that the "same evidence" rule bars "the imposition of a consecutive sentence for the underlying felony." The defendant's reliance on those cases is misplaced. He received a concurrent sentence on the arson conviction.[7] The question that he raises concerns the imposition of consecutive life sentences on the murder convictions. Double jeopardy and the "same evidence" rule do not bar consecutive sentences for murder. Under the defendant's theory a court could not impose consecutive sentences for any number of multiple killings. See *Commonwealth* v. *Wilson,* 381 Mass. at 123 n.60. We do not find the sentences to be duplicative. *Commonwealth* v. *Rhoades,* 379 Mass. 810, 812 n.2 (1980).

*Judgments affirmed.*

---

[6] The defendant received life sentences on the four remaining second degree murder convictions, all to be served concurrently with each other and concurrent with the consecutive sentences imposed on the other three second degree murder convictions. The judge also imposed an eighteen to twenty year sentence on the arson conviction, that sentence to be served concurrently with the third consecutive life sentence.

[7] Defense counsel contended at argument but not in his brief (see Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]) that the judge committed error in imposing the arson sentence concurrent with the third consecutive life sentence rather than the first life sentence. We do not pass upon the question but note that if the defendant believes that there is any merit to his claim, he may move for a revision of sentence within the time guidelines set forth in Mass.R.Crim.P. 29, 378 Mass. 899 (1979). *Commonwealth* v. *Layne,* 386 Mass. 291, 295 (1982).