## COMMONWEALTH vs. JAMES B. CARVER.

No. 90-P-737.

Essex. June 16, 1992. - October 6, 1992.

Present: KASS, PORADA, & LAURENCE, JJ.

*Practice, Criminal*, New trial, Instructions to jury, Lesser included offense, Mistrial, Sentence. *Evidence*, Judicial discretion, Opinion, Redirect examination, Consciousness of guilt. *Homicide. Constitutional Law*, Double jeopardy.

The judge at a criminal trial acted within his discretion in denying without a hearing the defendant's motion for a new trial. [380-381]

At a criminal trial the judge did not err in excluding evidence offered by the defendant that was not relevant or material to the case against the defendant [381-383] or that called for a witnesses's opinion or speculation as to another's state of mind [383].

At a criminal trial no substantial risk of a miscarriage of justice was created by the judge's allowing the prosecutor to pursue a certain line of inquiry suggesting that the witness feared the defendant, where the jury could have drawn that conclusion from other admissible testimony. [383-384]

At the trial of an indictment for arson, the judge properly excluded evidence of the defendant's acquittal of threatening to burn another building, where the evidence of the threat encompassed an admission that the defendant had committed the arson. [384-385]

The judge at a criminal trial created no substantial risk of a miscarriage of justice by instructing the jury so as to remedy an improper statement in defense counsel's closing argument. [385-386]

At a criminal trial there was no error in the judge's failure to give an instruction to the jury on his own motion on the issue of consciousness of guilt. [386]

In the circumstances of a murder trial in which the defendant, as part of his trial strategy, failed to request or object to the omission of a charge on involuntary manslaughter, there was no error in the judge's omission of such a charge. [386-387]

There was no basis for dismissal of indictments on double jeopardy grounds after a mistrial at the defendant's request, occasioned by the failure of the Commonwealth to disclose two police reports to the defendant [387-388], nor were sanctions warranted against the Commonwealth, barring use of incriminating evidence discovered after the declaration of the mistrial [388-389].

There was no error in a judge's revoking and revising sentences imposed on a criminal defendant to correct the imposition of an unlawful sentence, even though the result was to increase the severity of the sentence. [389-390]

INDICTMENTS found and returned in the Superior Court Department on May 4, 1988.

The cases were tried before *Cortland A. Mathers*, J., and a motion for a new trial was considered by him.

*Dana A. Curhan* for the defendant.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was charged with fifteen counts of second degree murder and one count of burning a dwelling house. His first trial ended in a mistrial because of prosecutorial misconduct. At his second trial, he was convicted by a jury of all charges. The defendant filed a motion for a new trial, which was denied without a hearing.

On appeal from his convictions and the denial of his motion for a new trial, the defendant claims the trial judge erred as follows: (1) in denying his motion for a new trial without a hearing; (2) in making certain evidentiary rulings; (3) in instructing the jury that there was no evidence tying a particular witness, whose testimony at the trial had been impeached, to the crimes; (4) in failing to instruct the jury on consciousness of guilt; (5) in failing to instruct on involuntary manslaughter; (6) in refusing to dismiss the indictments on double jeopardy grounds or to preclude the use of evidence uncovered after the first trial; and (7) in revoking the defendant's original sentences and imposing in their place sentences which carried a later parole eligibility date. We affirm the convictions and the denial of a new trial.

We summarize the pertinent evidence presented at the trial. Fifteen people died in an early morning fire on July 4, 1984, at the Elliott Chambers rooming house in Beverly. An arson investigator, who inspected the scene on July 9, 1984, determined that the fire began in the alcove adjacent to the front entrance to the rooming house. He concluded that the

fire had started on a stack of newspapers found next to the door which had been set on fire with some type of hydrocarbon accelerant. He ruled out electrical failure or spontaneous combustion as a cause of the fire.

In the early evening on July 3, 1984, the defendant was at work at the Atlantic House of Pizza, which is near the Elliott Chambers rooming house. In the alley adjacent to the defendant's work place, he encountered Rick Nickerson, who lived at the Elliott Chambers rooming house. The defendant warned Nickerson that if he continued to date the defendant's former girl friend, Lisa Maggiacomo, he would kill him and burn his house down. At about 1:15 A.M. on July 4, 1984, the defendant told a friend that he was upset because he had broken up with Lisa and that he wanted her back. Between 3:00 A.M. and 4:00 A.M., a cab driver observed the defendant standing in front of the rooming house and saw a car which fit the description of the defendant's car parked adjacent to the rooming house. Around 4:00 A.M., Florence Michaud, who delivered newspapers in the neighborhood, saw a man standing in the entry way to the rooming house leaning over a stack of newspapers. She could not identify the defendant as the man she had seen. At about the same time, Harold Eastman was delivering papers to the drug store adjacent to the rooming house and saw a man standing in the doorway to the rooming house smoking a cigarette. He testified that the defendant was not this man. The fire broke out at about 4:18 A.M. The defendant's parents testified that the defendant was at home asleep at that time. In the months that followed the aftermath of the fire, the defendant made a number of incriminating statements, including an admission to two friends that he had set the fire.

1. *Motion for a new trial.* The defendant argues that the judge erred in denying his motion for a new trial without a hearing. "The choice of deciding the motion on the basis of affidavits or hearing oral testimony is left largely to the sound discretion of the judge." *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110 (1989). In exercising this discretion, the judge must decide whether a substantial issue necessitating

an evidentiary hearing has been raised. *Id.* at 111. In doing so, the judge looks not only to the seriousness of the claims presented, but also to the adequacy of the defendant's factual showing on those claims. *Commonwealth v. Stewart*, 383 Mass. 253, 257-258 (1981). Here, the motion before the trial judge alleged, without more, "the discovery of new evidence," and the only affidavit submitted in support of the defendant's motion was an affidavit of the defendant's trial counsel. The affidavit stated that counsel had received information that one Miles Hale had "confessed to the crimes [for] which James Carver was convicted" and that counsel had obtained this information after the defendant's convictions. Accompanying the motion were unverified summaries of State police interviews conducted at the Lawrence house of correction with Miles Hale and with three of his fellow inmates, who reported that Hale had admitted setting the fire by opening the door to the rooming house and throwing a lit newspaper into the hallway. Although the judge was entitled to reject the affidavit and the summaries as hearsay, *Commonwealth v. Stewart*, 383 Mass. at 258, he denied the motion on the basis that no substantial issue meriting an evidentiary hearing had been raised because the alleged confession did not square with the expert testimony regarding the fire's point of origin and its cause. As the trial judge, he was entitled to use his knowledge and evaluation of the evidence at trial in reaching a decision on this motion. *Commonwealth v. Tracy*, 27 Mass. App. Ct. 455, 463 (1989). The judge did not abuse his discretion in denying the motion without a hearing. See *Fogarty v. Commonwealth*, 406 Mass. at 110-111.

2. *Evidentiary rulings.*

a. *Evidence of satanic cult activities.* The defendant contends that the trial judge erroneously excluded evidence of satanic cult activities, which the defendant claimed was material in proving his defense that someone other than the defendant set the fire as part of a satanic ritual. Although a defendant may introduce evidence that someone else committed the crime charged or had the motive and intent to com-

mit the crime, *Commonwealth* v. *Graziano*, 368 Mass. 325, 329 (1975), the evidence must not be too remote in time or too weak in probative value and it must be closely related to the facts of the case against the defendant. *Id.* at 329-330. Whether the evidence meets these tests is left to the sound discretion of the trial judge, which, although not absolute, will not ordinarily be disturbed by an appellate court. *Commonwealth* v. *Harris*, 395 Mass. 296, 300 (1985). *Commonwealth* v. *Signorine*, 404 Mass. 400, 408 (1989). We conclude that there was no abuse of discretion in this case.

Here, the defendant's claim was based on the judge's refusal to allow defense counsel to elicit information about satanic cult activities from three witnesses. The defendant asked a prosecution witness, Thomas Page, whether he was aware that Lisa Dion was involved in satanic culture or engaged in satanic rituals. Defense counsel informed the court that the evidence was relevant, for he intended to offer evidence that Lisa Dion had admitted that she had set the fire as part of a satanic initiation. However, at that juncture of the trial no evidence tying Lisa Dion to the fire or showing that the fire was set as part of a satanic ritual had been presented. Moreover, the judge did not preclude the defendant from offering this evidence later on in the trial if the defendant established its relevancy.

Similarly, the judge acted within the bounds of his discretion in refusing to allow the defendant to inquire of the deputy fire chief what materials were found in an adjacent building at the time of the fire. The defendant sought to show that the building contained books, weapons, and photographs associated with a cult activity. The defendant's offer of proof failed to establish that the witness had any personal knowledge of what the building contained and failed to show how those materials were related to the case being tried.

Finally, after a resident of the rooming house, Blanche Poor, testified that there were writings on the walls of her floor of the rooming house including an upside down cross, all of which had been removed "away back" and before the fire, the judge precluded the defendant from inquiring

whether there were any threatening words on her door. The defendant asked the judge to admit this evidence as corroborative of the defense's theory that Lisa Dion set the fire as part of a satanic ritual. Since the witness had testified that the writings in the hallway had been removed before the fire and there was no evidence tying the writings to Lisa Dion or a satanic cult, we cannot say the judge abused his discretion in excluding this evidence.

b. *Evidence of defendant's past falsehoods.* The defendant claims that the judge erred in refusing to allow defense counsel to inquire of a prosecution witness whether the defendant had lied to her in the past to gain her sympathy. Christine Coletti had testified on direct examination that in October, 1984, the defendant told her he set the Elliott Chambers fire. On cross-examination, the judge precluded defense counsel from inquiring whether the defendant had lied to her in the past to gain her sympathy. The judge properly sustained the objection, because the question called for a mere opinion or speculation as to another person's state of mind. *Commonwealth* v. *Millyan*, 399 Mass. 171, 182-183 (1987). See *Commonwealth* v. *Lewis*, 286 Mass. 256, 257 (1934)(defendant not permitted to testify a person knew him because defendant did not have knowledge of that person's state of mind). Moreover, "[i]t is a fundamental principle that 'a witness cannot be asked to assess the credibility of his testimony or that of other witnesses.' " *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986), quoting from *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706 (1985).

c. *Redirect examination of Lisa Maggiacomo.* The defendant alleges that the trial judge erred in allowing the prosecutor on redirect examination to question a Commonwealth witness (1) as to whether she had gone before a Superior Court judge to determine if she had to talk to the defendant's attorney or have anything to do with the defendant and (2) as to whether she had refused to disclose her address to the defendant. To both questions, the witness answered in the affirmative. There was no objection by defense counsel. The prosecutor then inquired why she did not want the de-

fendant to have her address. The defendant objected and the judge sustained his objection.

The defendant now argues that the judge should not have permitted this line of inquiry, because it prejudiced the defense by creating the impression that the witness had good reason to fear the defendant. Since the defendant did not object to the line of inquiry, our review is limited to determining whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

The prosecutor's line of inquiry was prompted by the defendant's cross-examination concerning the witness's reluctance prior to trial to talk to defense counsel. In an attempt to rebut the inference that the witness was biased in favor of the Commonwealth, the prosecution sought to show that she chose not to speak with defense counsel because she feared the defendant.

Assuming that the jury could infer from this evidence that the witness feared the defendant, we conclude nonetheless that there was no risk of a miscarriage of justice. The jury would have been warranted in drawing the same conclusion from her prior testimony that the defendant, when she refused to see him, threatened to burn down the shelter where she was living.

d. *Exclusion of evidence of defendant's acquittal on a complaint for threats.* The defendant argues that he should have been permitted to introduce evidence that he had been acquitted of making threats to burn a shelter called Project Rap, where Lisa Maggiacomo lived temporarily. The Commonwealth introduced evidence that the defendant had told a worker at the shelter, "I'll burn your place, just like I did in Beverly." The defendant wished to offer evidence of his acquittal of making threats. The judge ruled that he would exclude this evidence. A judge has discretion to admit a defendant's earlier acquittal of a crime shown by the evidence. *Commonwealth* v. *Mayfield,* 398 Mass. 615, 627-628 (1986). In certain circumstances, fairness may warrant the admission of the evidence. *Id.* at 628. *Commonwealth* v. *Mahan,* 18

Mass. App. Ct. 738, 742 (1984). Although the judge in this case did not disclose his reason for excluding the evidence, he acted within his discretion, because the evidence was introduced to prove the defendant committed the crime for which he was being tried — burning the rooming house in Beverly — and not as evidence of threatening to burn the shelter down. In addition, evidence of the acquittal, standing alone, might well have misled and confused the jury and any explanation by the judge of the acquittal, see *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982), might well have dissipated any benefit to the defendant from the evidence. See *Commonwealth* v. *Mayfield*, 398 Mass. at 628.

3. *Instruction to the jury that there was no evidence tying Lisa Dion to the fire.* The defendant argues that the judge invaded the fact-finding province of the jury when he instructed them that "there is absolutely not a particle of evidence before you that Lisa Dion set the fire in this case." The defendant did not object to the instruction. Consequently, our review is limited to whether there was a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. at 563-564. There was none.

The judge's instruction was prompted by the improper argument of defense counsel to the jury that Lisa Dion could have set the fire, because she had confessed to doing so. Lisa Dion was called as a witness by the defendant. During her examination by defense counsel, she denied ever telling Lori Brennan that she set the rooming house fire as part of a satanic ritual. To impeach her testimony, the defendant offered the deposition of Lori Brennan that Lisa Dion had told her she set the fire. Since the alleged confession was admitted for impeachment purposes only, see *Commonwealth* v. *Rosa*, 412 Mass. 147, 156 (1992), the judge's instruction upon the prosecutor's objection and request for a curative instruction was an attempt to remind the jury of this fact.

The defendant also contends that even if the instruction was proper to remedy defense counsel's impermissible statements, the instruction was too broad and precluded the jury from considering other evidence tying Lisa Dion to the fire.

Our review of the record does not disclose any such evidence from which the jury could have reasonably inferred that Dion set the fire.

4. *The judge's failure to instruct on consciousness of guilt.* During his closing argument, the prosecutor argued that certain aspects of the defendant's behavior indicated his consciousness of guilt, namely, that he appeared moody and confused and was pacing about on the morning after the fire and that, although he already knew about the fire, he feigned surprise when told about the fire a second time. Although the defendant did not make any objection to these remarks or request an instruction on consciousness of guilt and the caution to be exercised in considering consciousness of guilt evidence, he now complains that it was error for the judge to omit such an instruction. There is no requirement that a judge sua sponte instruct the jury on consciousness of guilt. *Commonwealth* v. *Booker,* 386 Mass. 466, 471-472 (1982). *Commonwealth* v. *Clark,* 20 Mass. App. Ct. 392, 395-396 (1985). Rather, the determination whether to give such an instruction is left to the sound discretion of the trial judge. *Commonwealth* v. *Kozec,* 21 Mass. App. Ct. 355, 366 (1985), *S.C.,* 399 Mass. 513, 526 (1986). Here, it is debatable whether this evidence could be described as evidence of consciousness of guilt. See *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 52 (1975), and cases collected therein. Moreover, this evidence was of peripheral importance in establishing the guilt of the defendant. We perceive no error in the judge's failure to give the instruction. *Commonwealth* v. *Booker,* 386 Mass. at 471-472. See *Commonwealth* v. *Clark,* 20 Mass. App. Ct. at 395-396.

5. *Failure to give an involuntary manslaughter instruction.* The judge did not give an involuntary manslaughter instruction. During the charge conference, defense counsel informed the judge that he was not inclined to request an instruction on involuntary manslaughter and would advise the defendant that he "ought to go for all or nothing." Nothing more was said by defense counsel, and he did not object to the judge's instructions.

It is well established that, if any view of the evidence in a case would permit a finding of manslaughter rather than murder, a manslaughter charge should be given. *Commonwealth* v. *Walden*, 380 Mass. 724, 726 (1980). During the trial, one of the Commonwealth's witnesses had testified that "Jimmie Carver said that he didn't mean to kill anybody, he didn't mean to hurt anybody. He was just trying to scare the people." Whether this evidence warranted an instruction on manslaughter is a close question. See *Commonwealth* v. *Martinez*, 393 Mass. 612, 613 (1985)(whether an involuntary manslaughter instruction should have been given where defendant lit a newspaper, threw it into a hallway of an apartment building, and then returned to her apartment to watch television deemed a close question; instruction on manslaughter held required). In any event, we conclude that where the defendant as part of his trial strategy failed to request or object to the omission of a charge on involuntary manslaughter, there was no error in the judge's omission of such a charge. See *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 52 n.4 (1986), where we recognized that for tactical reasons a defendant might prefer to forgo an instruction on a lesser included offense. Even if the failure to give the instruction was error, in light of the overwhelming evidence against the defendant showing these crimes to be murder, the omission did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Shine*, 398 Mass. 641, 654-655 (1986).

6. *Motion to dismiss or to preclude introduction of evidence discovered after mistrial.* The defendant claims that the indictments should have been dismissed on double jeopardy grounds or, in the alternative, the Commonwealth should have been barred in the second trial from introducing evidence discovered after the first trial ended in a mistrial. We disagree.

During the first trial, the judge declared a mistrial at the request of the defendant based on the failure of the Commonwealth to disclose two police reports to the defendant until midway in the trial. One report contained an interview

with Lisa Dion in which she told the police that the defendant had admitted to setting the fire, and the other contained an interview with Betty Razza, in which she intimated that Lisa Dion could have set the fire.

As a general rule, a mistrial granted at the request of the defendant is not a bar to retrial on double jeopardy grounds. *Oregon* v. *Kennedy*, 456 U.S. 667, 682-683 (1982). *Commonwealth* v. *Andrews*, 403 Mass. 441, 447-448 (1988). However, where a defendant's motion for a mistrial is allowed due to prosecutorial misconduct, double jeopardy principles may be a bar to further prosecution if the prosecutorial conduct was intended to goad the defendant into moving for a mistrial or if the prosecutorial conduct resulted in such irremediable harm that a fair trial of the indictment is no longer possible. *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 311-313 (1984). *Commonwealth* v. *Murchison*, 392 Mass. 273, 276 (1984).

Here, the judge made no finding that the objective of the delayed disclosure was to goad the defendant into moving for a mistrial. Nor is one warranted by the record. In *Commonwealth* v. *Lam Hue To*, 391 Mass. at 311, the Supreme Judicial Court held that delayed disclosure of exculpatory evidence by the prosecutor is not sufficient to invoke the double jeopardy bar to further prosecution. There is also nothing in the late disclosure of these two reports which undermined the defense or prevented the defendant from receiving a fair trial. The Dion statement was inculpatory and was omitted from the second trial. The Razza statement containing her opinion that Lisa Dion may have started the fire was inadmissible opinion evidence. Further, the defendant concedes that nothing contained in these reports deprived him of the possibility of a fair trial.

Nevertheless, the defendant claims that the judge erred in refusing, as a sanction, to bar the Commonwealth from introducing incriminating evidence discovered after the declaration of the mistrial. This evidence surfaced independently of the material contained in the delayed disclosed reports, and there is no basis for concluding that the prosecutor's miscon-

duct was intended to buy more time to acquire this previously unknown testimony. Although a court may exercise its general sanction power under Mass.R.Crim.P. 14(c)(2), 378 Mass. 880 (1979), to exclude evidence, the better practice is to allow each party to present all relevant evidence. See Reporters' Notes to Mass.R.Crim.P. 14(c), Mass. Ann. Laws, Rules of Criminal Procedure at 310 (Law. Co-op. 1979). Further, we know of no case, and the defendant has cited none to us, in which in similar circumstances the relief requested has been ruled an appropriate sanction under Mass.R.Crim.P. 14(c).

7. *The sentences.* The defendant argues that the judge erred in revoking the sentences imposed upon the defendant and imposing in their place more severe sentences. Initially the judge imposed a fifteen to twenty year State prison sentence on the arson conviction and life sentences on each of the fifteen murder convictions, to be served concurrently with each other but from and after the sentence on the arson charge. After the clerk read the sentences, the prosecutor advised the judge that the sentences imposed were illegal. The judge then revoked the sentences and imposed a life sentence on count 1 of the murder indictment and a fifteen to twenty year sentence to State prison on the arson charge to run concurrently with the life sentence imposed on count 1. He then imposed concurrent life sentences on the remaining murder convictions to be served from and after the life sentence imposed on count 1 of the murder indictment.

The first sentence on the arson charge was unlawful. "[W]henever the possibility exists that a jury might have reached a verdict of murder . . . on the basis of a felony-murder theory, a consecutive sentence may not be imposed for the underlying felony." *Commonwealth* v. *Wilson*, 381 Mass. 90, 124 (1980). *Commonwealth* v. *Davila*, 17 Mass. App. Ct. 511, 515 (1984). The second sentence was not unlawful, because the defendant received a concurrent sentence on the arson charge. *Ibid.* There is also nothing illegal about imposing consecutive sentences for murder. *Commonwealth*

v. *Rhoades*, 379 Mass. 810, 812 n.2 (1980). *Commonwealth* v. *Davila*, 17 Mass. App. Ct. at 515.

There is no merit to the defendant's argument that the judge could not, in revising the sentences, increase their severity.[1] *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 268-270, cert. denied, 459 U.S. 864 (1982). Under Mass.R. Crim.P. 29(a), 378 Mass. 899 (1979), a judge has the authority on his own motion to revoke and revise a sentence and increase its severity if it appears that justice may not have been done. *Aldoupolis* v. *Commonwealth*, 386 Mass. at 268-271. *Commonwealth* v. *Derry*, 26 Mass. App. Ct. 10, 12 (1988).

> *Judgments affirmed.*
> *Order denying motion for new trial affirmed.*

---

[1]Under the original sentences, the defendant would have been eligible for parole in twenty-five years; under the revised sentences, he would be eligible for parole in thirty years. See G. L. c. 127, §§ 133-133A. See also 120 Code Mass. Regs. §§ 203.01, 203.04, & 203.08 (1990).