NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1177                                      Appeals Court

COMMONWEALTH  vs.  JUSTIN J. BUSTARD.

No. 24-P-1177.

Plymouth.    October 9, 2025. - January 16, 2026.

Present:  Ditkoff, D'Angelo, & Wood, JJ.


Abuse Prevention.  Protective Order.  Authentication.  Social
    Media.  Practice, Criminal, Motion for a required finding.


Complaint received and sworn to in the Plymouth Division of
the District Court Department on January 10, 2023.

The case was heard by Scott D. Peterson, J.


Meghan K. Oreste for the defendant.
Karen A. Palumbo, Assistant District Attorney, for the
Commonwealth.


DITKOFF, J.  The defendant, Justin J. Bustard, appeals from

a conviction, after a jury-waived trial in the District Court,

of violating an abuse prevention order, G. L. c. 209A, § 7.

Concluding that evidence of a Snapchat message to the victim,

received the same day that the defendant's girlfriend was

interacting with the victim's fiancé, from an account with a

similar bitmoji to that of the defendant's, and that stated, "You happy," without other context, was insufficient to show beyond a reasonable doubt that the defendant sent the message to the victim, we reverse.

1.  Background.  On February 19, 2021, the victim obtained an abuse prevention order against the defendant that forbade the defendant from contacting the victim "[i]n person, by telephone, in writing, electronically, or otherwise, either directly or through someone else."  The order was extended for a year on March 11, 2022.[1]

During their relationship, the victim and the defendant had communicated over the application Snapchat.[2]  The defendant used an account with the username "jayysworld25" and the display name "Justin Bustard."  "[S]omewhere after [the defendant and the victim] had split up," though, the victim blocked communications from jayysworld25.  "[D]uring all of [their] court situations," jayysworld25 was blocked.[3]  In 2020, prior to the issuance of the

---

[1] The order was eventually made permanent.

[2] Snapchat is a social media platform that can be downloaded as an application to a mobile phone.  Users can send messages to and share photographs with each other.  A user may have both a username and a display name.  Additionally, a user may create a "bitmoji," which is a self-designed graphic character, or avatar, that is shown next to the username and display name. See Commonwealth v. Carrasquillo, 489 Mass. 107, 108-110 (2022).

[3] As of the date of the trial, jayysworld25 was still blocked by the victim.

abuse prevention order, the victim received a Snapchat message from another username, "jesseman94," with the display name "Jesse Cunningham." The bitmoji associated with that account had "slicked-back hair with a beard and a blue shirt."[4] (The bitmoji for jayysworld25 also had slicked-back hair with a beard, but the beard was different than the one for jesseman94.) The message read, "Miss me." The victim testified that she did not know who had messaged her. The victim did not receive any further messages from jesseman94 until July 14, 2022.

On July 2, 2022, the victim posted about her birthday and engagement party on social media. She testified that she received a mobile phone notification from Snapchat showing that jesseman94 was "typing."[5] No message was ever received.

On July 14, 2022, while the victim was at work, jesseman94 sent the message, "You happy." The victim sent back a question mark, but no messages followed. The victim testified that the defendant's girlfriend was at court that morning seeking an

---

[4] The victim described a bitmoji: "For Snapchat purposes, you take the avatar and you recreate yourself, using different features and you have different colors. You get to change your eyebrow texture and all of that stuff."

[5] The victim testified that "[she] had received a notification that had told [her] that a user was typing," and "when a user is typing to you, it is -- they don't usually -- you get [a notification] before somebody goes through and sends a message."

abuse prevention order against the victim's fiancé.  After receiving, "You happy," the victim reached out to her sister and asked her to look up jesseman94 on the sister's own Snapchat account.  When the sister looked up jesseman94, the name associated with the account appeared as "Justin" rather than "Jesse Cunningham."  The victim explained this inconsistency, testifying that different Snapchat users may see different names for one account because a user can "change [the] display name."  Because the victim had "accepted [jesseman94] under the name of Jesse Cunningham, [her view] won't change," even if the user later changes the display name.  The victim further testified that the defendant's brother's name is Jesse and that the defendant's old family friends were the Cunninghams.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty.  The judge denied the motion.  The judge ultimately found the defendant guilty. This appeal followed.

2.  Standard of review.  "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App.

Ct. 129, 133 (2018).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Sabin, 104 Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Howe, 103 Mass. App. Ct. 354, 357 (2023).  "A conviction cannot stand, however, if it is based entirely on conjecture or speculation."  Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

For the crime of violating an abuse prevention order, the Commonwealth must prove beyond a reasonable doubt that "(1) a valid [abuse prevention] order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order."  Commonwealth v. Carino, 496 Mass. 783, 786 (2025), quoting Commonwealth v. Dufresne, 489 Mass. 195, 200 (2022).  A basic yet crucial element to be proved in any case "is that the individual who appears before the court as the defendant is the same person who is the subject of the indictment or complaint then on trial and the same person referred to in the evidence."  Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010), quoting Commonwealth v. Davila, 17 Mass. App. Ct. 511, 512 (1984).  At issue here is whether the evidence allowed the trier of fact to find, beyond a reasonable doubt, that it was indeed the defendant who sent the communication alleged to have violated the abuse prevention order.

In Commonwealth v. McMann, 97 Mass. App. Ct. 558, 559 (2020), we determined that there was insufficient evidence to find proof beyond a reasonable doubt that the defendant there authored or sent the victim an Instagram[6] message reading "Yoooo" from the username "bigm617." The account showed pictures of the defendant and the victim, and the defendant had access to the account, but "there was no circumstantial evidence establishing authorship," and "[n]othing about the content or tone of the message . . . corroborated that the defendant wrote it." Id. at 560. There was no reference to prior conversations between the victim and the defendant and no evidence that the defendant ever sent messages to the victim through Instagram. Id. at 560-561.

Authentication requires only proof by a preponderance of the evidence. See Commonwealth v. Gonzalez, 99 Mass. App. Ct. 161, 170 (2021).[7] Although we consider whether the evidence was sufficient to prove beyond a reasonable doubt that the defendant sent the message, "[w]e are guided by cases addressing

---

[6] "Instagram, which can be downloaded as a cell phone application, is a social media platform that enables users to share photographic content and send messages to other users." McMann, 97 Mass. App. Ct. at 558 n.1.

[7] Because sufficiency "is to be measured upon that which was admitted in evidence without regard to the propriety of the admission," we consider the message in determining the sufficiency of the evidence without deciding whether it was properly authenticated. Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).

electronic communications in the authentication context" because the fact finder here, to convict, necessarily had to conclude that the communication was authored or sent by the defendant to find him guilty beyond a reasonable doubt.  McMann, 97 Mass. App. Ct. at 559.  See Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018), cert. denied, 587 U.S. 987 (2019) ("We acknowledge that in this case there was a fine line between the [1] preliminary determination of the authenticity of the text messages and [2] proof of the defendant's identity as the perpetrator of the threats.  Nevertheless, authenticity and identity are different legal concepts . . .").

In Commonwealth v. Williams, 456 Mass. 857, 867-869 (2010), the Supreme Judicial Court held that there was inadequate evidence to authenticate that Myspace[8] messages were sent by the defendant's brother because there was "no testimony . . . regarding how secure such a Web page is, who can access a Myspace Web page, whether codes are needed for such access, etc."  Even though "[t]he contents of the messages demonstrate[d] that the sender was familiar with [the witness] and the pending criminal cases against the defendant," "the person who actually sent the communication" was never

---

[8] "[A] social networking Web site."  Williams, 456 Mass. at 867.

established.  Id. at 869.  See Commonwealth v. Troche, 493 Mass. 34, 48-49 (2023) ("A voir dire examination of [the witness, who may have falsely testified,] might have elicited the requisite confirming circumstances or alternatively might have confirmed the messages' lack of authenticity").

On the other hand, in Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 759 (2016), we concluded that adequate confirming circumstances existed to establish, by a preponderance of the evidence, that the defendant authored Facebook[9] chat messages that were downloaded from the hard drive of two laptop computers issued to the defendant by the school.  The messages were "replete with personal references, including pet names the defendant and victim used for each other, and references to events in which the two alone participated."  Id.  The defendant's name and picture appeared on the Facebook account, and access to the school-issued computers was limited to the defendant by a username and password.  Id.  See Commonwealth v. Welch, 487 Mass. 425, 441 (2021) ("The messages were replete with details of the defendant's and the victim's lives, including the tensions within their relationship, aspects of their living arrangements, and the suspension of the defendant's

---

[9] A "social networking Web site."  Gilman, 89 Mass. App. Ct. at 753.

driver's license from his [operating a motor vehicle while under the influence of alcohol] charge").

In Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 368 (2014), we similarly concluded that the Commonwealth had shown, by a preponderance of the evidence, that the defendant authored a message where the confirming circumstances

> "included the familiar tone of the exchange, the sender's references to prior discussions with [the witness] about [the witness's] boyfriend's height, [the witness's] mother's anger, the height and personal habits of the sender's wife, the sender's recent decision to shave his beard, the location of [the witness's] bedroom window at home, the sender's approaching appointment with a client in South Deerfield, and mention of the sender's son."

Once again, as in Gilman, the instant messages referred to prior conversations between the defendant and the witness that would have been too "elaborate and generally inexplicable" to have been manufactured. Oppenheim, supra.

In Commonwealth v. Gonsalves, 99 Mass. App. Ct. 638, 641-642 (2021), evidence that the defendant was the author of text messages showing knowledge of certain events relevant to the case and "contain[ing] 'recurring spelling errors,' which the victim identified as typical in the defendant's communications," met the preponderance standard. The victim had also testified that the mobile phone number was the defendant's and that she had never been contacted by anyone but the defendant from that number. Id. at 642. See Alden, 93 Mass. App. Ct. at 440-441

(witness "had contacted the defendant multiple times each week using the telephone number from which the threatening messages originated.  When she called that number, the defendant answered.  When she sent a text message to that number to arrange a meeting with the defendant, he appeared").

Here, the meager communication record provided an inadequate basis to find beyond a reasonable doubt that the defendant sent the jesseman94 "You happy" message.  The solitary message of "You happy" could not reasonably guide the fact finder to the defendant.  The message does not refer to any prior conversations between the victim and the defendant, contains no personal references, and reads without a singular or familiar tone.  See Oppenheim, 86 Mass. App. Ct. at 364 ("[The witness] answered that 'the tone and language was [what] I was used to having with [the defendant], the way we would talk in the [Pioneer Arts Center] cafe'").  The message does not show that the sender had any information about the July 14 restraining order hearing between the victim's fiancé and the defendant's girlfriend, and, besides, the hearing was not an event about which the victim and the defendant only would have knowledge of or motive to discuss.  See Gilman, 89 Mass. App. Ct. at 759.  See also Gonsalves, 99 Mass. App. Ct. at 642 ("the contents of the messages pointed to the defendant as the author

because they reflected 'particular knowledge of contemporaneous events' relevant to the case").

Additionally, the evidence failed to establish that jesseman94 was the defendant's account or that the defendant even had access to the account. See Williams, 456 Mass. at 869, citing Commonwealth v. Hartford, 346 Mass. 482, 488 (1963) ("Analogizing a Myspace Web page to a telephone call, a witness's testimony that he or she has received an incoming call from a person claiming to be 'A,' without more, is insufficient evidence to admit the call as a conversation with 'A'"). The bitmojis on the defendant's and Jesse Cunningham's accounts were similar but not the same, and there was no evidence demonstrating how many options a user has when building a bitmoji or how the two bitmojis were evocations of the defendant.[10] Apart from the bitmojis, the conclusion that the defendant was using his brother's name and his family friend's last name required that the fact finder take too great an inferential leap. See Commonwealth v. Lopez, 484 Mass. 211, 216

---

[10] At oral argument, defense counsel stated that a Snapchat user has a "limited number of selections" when creating a bitmoji. For example, "maybe [the users] have ten to twenty different hairstyles they can pick from when they're creating their bitmoji." See Commonwealth v. Rodriguez, 496 Mass. 627, 629 (2025) ("a Snapchat user also has the option of creating and displaying an animated figure called a 'bitmoji,' which is viewable by other users").

(2020), quoting <u>Commonwealth</u> v. <u>Mandile</u>, 403 Mass. 93, 94 (1988) ("[A] conviction may not 'rest upon the piling of inference upon inference'"). The evidence did not show that the defendant ever went by the name "Jesse Cunningham" or that the defendant had previously reached out to the victim through this account.[11] Even if the piling of inferences were permissible (which it is not), "[e]vidence that the defendant's name is written as the author of an e-mail or that the electronic communication originates from an e-mail or a social networking Web site . . . that bears the defendant's name is not sufficient alone to authenticate the electronic communication as having been authored or sent by the defendant." <u>McMann</u>, 97 Mass. App. Ct. at 559, quoting <u>Commonwealth</u> v. <u>Purdy</u>, 459 Mass. 442, 450 (2011). Accordingly, the defendant's motion for a required finding of not guilty should have been allowed.[12]

<u>Judgment reversed</u>.

<u>Finding set aside</u>.

<u>Judgment for defendant</u>.

---

[11] The February 7 message "Miss me" came prior to the issuance of the abuse prevention order, and the victim herself testified that she had not known or believed to have known who sent it. For the similar reasons as with the "You happy" message, there was inadequate evidence to permit the trier of fact to find that the defendant sent the "Miss me" message.

[12] Having so determined, we do not reach the other issues presented by the defendant on appeal, including whether the message was properly admitted in evidence.