## Commonwealth *vs.* Ellis Price.

No. 07-P-955.

Norfolk. May 8, 2008. - July 29, 2008.

Present: Cypher, Brown, & Fecteau, JJ.

*Larceny. False Pretenses. Practice, Criminal,* Venue, Identification of defendant in courtroom, Dismissal. *Evidence,* Identification, Hearsay. *Search and Seizure,* Affidavit, Probable cause.

Venue for prosecution of three indictments charging larceny by false pretenses properly lay in Norfolk County (and defense counsel was not ineffective for failing to challenge venue), notwithstanding that the transfer of funds by two of the victims occurred in Suffolk County, where the false pretenses occurred by means of telephonic communications to the homes of residents of Norfolk County, and following each call, the victim withdrew money from a bank account and carried it into Suffolk County to give to the defendant. [282-283]

At the trial of indictments charging larceny by false pretenses, sufficient evidence existed identifying the defendant as the culprit, despite only one of the three victims identifying the defendant in court, where the defendant's admission to the police regarding his role in the larcenies, as well as the circumstances of the "sting" operation conducted on the morning of the defendant's arrest, demonstrated that the defendant was acting with a modus operandi common to the alleged crimes and the larger crime spree under investigation. [283-285]

At a criminal trial, the admission in evidence of hearsay did not give rise to a substantial risk of a miscarriage of justice, where the evidence was cumulative. [285]

A Superior Court judge did not err in denying the criminal defendant's motion to suppress evidence seized as the result of the execution of a search warrant at his apartment, where the affidavit accompanying the application for the warrant recited sufficient facts and circumstances to provide probable cause to believe that evidence related to the criminal endeavor could be expected to be found in the apartment. [285-286]

The trial of indictments charging larceny by false pretenses was unaffected by a pretrial ruling on the defendant's motion to dismiss, where the ruling related only to those indictments charging extortion. [286-287]

Indictments found and returned in the Superior Court Department on May 13, 2003.

A motion to dismiss was heard by *R. Malcolm Graham,* J.; a

pretrial motion to suppress evidence was heard by *Barbara Dortch-Okara*, J.; and the cases were tried before *Judith Fabricant*, J.

*Elizabeth Doherty* for the defendant.

*Trisha R. Lee*, Assistant District Attorney, for the Commonwealth.

FECTEAU, J. The defendant, Ellis Price, appeals from convictions on three counts of larceny by false pretenses arising from his alleged telephonic communications with three elderly victims and the resulting transfer of monies to him. The defendant alleges as error the following: (1) the decision to allow the trial to be conducted in Norfolk County, notwithstanding that the transfer of funds by two of the victims occurred in Suffolk County[1]; (2) the denial of his motion for a required finding of not guilty based on the sufficiency of his identification as the culprit; (3) the admission of hearsay evidence that the telephone number suspected as the defendant's was physically wired to his apartment; (4) the denial of his motion to suppress certain items seized during a search of his apartment conducted with a warrant; (5) that his right to confrontation was abridged when the judge discouraged him from calling a witness who may have impeached the testimony of a prosecution witness; and (6) that the judge's action on a pretrial "*McCarthy* motion," see *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), to dismiss the indictments rendered his trial on these charges a nullity.[2] The defendant's venue and hearsay challenges also form the basis of additional claims of ineffective assistance of counsel. We affirm.

1. *Factual background.* By December, 2002, police officers in Wellesley and nearby towns were investigating at least ten reports of an ongoing "elderly-in-distress scam." Elderly residents reported receiving telephone calls from one or more males purporting to be family members in trouble and requesting the delivery of a certain amount of money to a certain area. The

---

[1]The defendant contests venue in only two of the three counts, conceding that with respect to the case involving victim M.R., venue in Norfolk County was proper, since the funds were delivered in Quincy.

[2]The defendant was originally charged on twenty-two indictments, eighteen alleging extortion, another alleging conspiracy to extort, and three alleging larceny by false pretenses.

telephone calls were similar in various respects; in several cases, for instance, the amount requested was $7,500.

Among the elderly residents called were B.D., M.R., and M.L., the victims of the crimes charged in the indictments at issue. B.D. and M.L. agreed to meet the caller with the money requested in the Dorchester section of Boston, at a location suggested by the caller. M.R. agreed to meet the caller in Quincy because she was unfamiliar with the site in Dorchester that he suggested. Each of the three victims obtained the money and drove to the agreed location where they were met by a black male who requested the money. In at least two of the cases, the victims asked the whereabouts of their relatives who supposedly needed assistance. Being assured that their relative would be along shortly, each of the victims handed over the money; then, after waiting some time without seeing the family member, each returned home and called their relatives, each of whom reported that they were not in trouble and had not made the call.

On December 20, 2002, in the midst of their investigation, the Boston police were alerted to another attempt to run this scam. This time, the police arranged for an older-appearing police officer to meet the defendant at the agreed location; upon his arrival, the defendant asked for the money. After the officer handed him fake money, the police arrested the defendant and Kenneth Golden, his brother-in-law and accomplice.

2. *Venue.* While prosecutions for larceny generally take place in the venue of the physical transfer of stolen goods to the defendant, there is an exception in cases of larceny by false pretenses. General Laws c. 277, § 59, allows for the prosecution to occur "in any county where the false pretense was made, written or used, or in or through which any of the property obtained was carried, sent, transported or received by the defendant."

As alleged, the false pretenses in this case occurred by means of telephonic communications originating in Suffolk County, and were "intended to produce and produc[ed] detrimental effects" within Norfolk County, where the prosecutions occurred. See *Commonwealth* v. *Levin*, 11 Mass. App. Ct. 482, 502 (1981), quoting from *Strassheim* v. *Daily*, 221 U.S. 280, 285 (1911). Cf. *United States* v. *Bushwick Mills*, 165 F.2d 198, 201-202 (2d Cir. 1947) (venue for violation of § 4 of Emergency

Price Control Act, which is proper "in any district in which any part of any act or transaction constituting the violation occurred," was appropriate in district into which caller's "words into the telephone [were] projected" and heard); *United States* v. *Lewis,* 676 F.2d 508, 511 (11th Cir.), cert. denied, 459 U.S. 976 (1982) (venue proper in district into which telephone calls amounting to overt acts in furtherance of conspiracy were placed). The defendant's representations were conveyed during telephone calls to the homes of residents of Norfolk County. Under these facts, venue was proper under G. L. c. 277, § 59. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 51-55 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts,* 380 U.S. 913 (1965). As a result, defense counsel's failure to challenge venue did not amount to ineffective assistance of counsel.

3. *Sufficiency of evidence identifying the defendant.* The defendant's contention that he was insufficiently identified as the culprit is grounded on the fact that of the three victims, only one (B.D.) identified him in court; one (M.R.) did not identify him at all, except to say that she recognized the defendant's picture on television after his arrest as having been the same person who had entered her car and to whom she gave her money, and the third (M.L.) identified him only in an out-of-court photographic array. While it is true that the defendant was not identified by each of his victims in court, this claim ignores the persuasive strength of the other inculpatory evidence presented. See *Commonwealth* v. *Davila,* 17 Mass. App. Ct. 511, 512 (1984).

Indeed, after his arrest, the defendant admitted to police that he had on three occasions picked up cash for Golden, while using a fictitious name. On at least two of the occasions, when asked the whereabouts of the victim's relative, the defendant said the relative would be along shortly, or words to that effect. Although the defendant argued that Golden had told him that the money to be picked up was owed to Golden, the record reveals sufficient evidence of the defendant's knowledge and intent to commit the crimes. This includes his admission that he intended to pick up money on a fourth occasion at 50 Grove Street in Wellesley but, upon seeing the elderly victim, felt badly, made up an excuse for

being there, and broke off the attempt. His statements during the undercover "sting" operation and after his arrest were likewise inculpatory.[3]

Moreover, describing events of the morning of his arrest to police, the defendant said that Golden was on the telephone in the defendant's apartment for approximately one-half hour and, upon hanging up the telephone, Golden immediately asked the defendant if he wanted to make some money, whereupon they left the apartment to pick up money at the location arranged, meeting police instead of another victim. The defendant also admitted in his statement that he and Golden first met at the defendant's apartment before conducting three pick-ups and one aborted pick-up attempt. Corroborating testimony from Detective Peter McLaughlin of the Wellesley police department established that many of the calls under investigation were traced to a telephone number listed to an Elissa Miller at 3 Kingsdale Street, Dorchester, third floor. After the defendant's arrest, upon execution of a search warrant at his apartment, officers found both the address and telephone number of one such prospective victim, who had received a call that had been traced to the subject number, as well as a telephone company work order and bill for the subject number.[4] Finally, the defendant's statement to the police corroborated in several respects the testimony of the Commonwealth's witnesses.[5] Admissions therein, as well as the circumstances of the sting operation, demonstrated that the defendant was acting with a modus operandi common to the al-

---

[3]In his statement, the defendant specifically described his interaction with the undercover officer as follows: "I walked up to the brown Oldsmobile and said to the man, 'I'm C.J. Do you got the money?' The man asked about his grandson. I said he was fine. 'He's around the corner.' I took the envelope and walked away."

[4]This prospective victim resided at 50 Grove Street in Wellesley, the same address that the defendant gave for the fourth prospective victim in his statement to the police. Detective McLaughlin testified that 50 Grove Street is an apartment building with up to four floors that "is primarily made up of elderly folks."

[5]The defendant's admission that he met a victim at the City Hall in Quincy was consistent with M.R.'s account that she met a caller at that location. The defendant's statement was also consistent with M.R.'s testimony that he had gotten into her car and had her drive a couple of blocks away before getting the money.

leged crimes and the larger crime spree under investigation. Considering all of the evidence, the defendant's motion for a required finding of not guilty was properly denied. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

4. *The admission of hearsay evidence.* The defendant complains that it was error for the judge to allow in evidence an unobjected-to statement from a telephone company technician, through the testimony of Detective McLaughlin, that the telephone number from which the calls were made was physically wired into the defendant's first-floor apartment, and not to the third-floor apartment as it appeared in telephone company records. Our review of the record reveals that this evidence was merely corroborative of other evidence which allowed for a strong inference that the calls were made from the defendant's apartment.

As stated above, the defendant admitted that Golden used his telephone to arrange the sting operation pick-up, and that the two had met at the defendant's apartment before the other admitted pick-ups. A telephone company work order for the telephone number to which numerous suspicious calls were traced, a bill for the subject number, and the telephone number of a prospective victim who received a suspicious call traced back to the subject number were all found at the defendant's apartment. Considering the evidence that the calls were made from the defendant's apartment, along with other evidence pointing to the defendant's guilt, the admission of the technician's statement did not create a substantial risk of a miscarriage of justice.[6] See *Commonwealth* v. *Simmons*, 448 Mass. 687, 691 (2007) ("we find a substantial risk of a miscarriage of justice only when we have a serious doubt whether the result . . . might have been different had the error not been made" [quotations omitted]).

5. *Denial of the motion to suppress.* The defendant contends that it was error to deny his motion to suppress the evidence

---

[6]The defendant also argues that his counsel's failure to object to the admission of the hearsay amounted to ineffective assistance of counsel. "[W]hen the claim of ineffectiveness is predicated, as it is here, on counsel's failure to object to something that occurred at trial, the standard for evaluating the ineffectiveness claim is not significantly different from the substantial risk standard that is applicable to our review of the underlying, unpreserved error." *Commonwealth* v. *Azar*, 435 Mass. 675, 686 (2002). For the foregoing reasons, this claim also fails.

seized as a result of the execution of a search warrant at his apartment. The defendant argues specifically that there was insufficient evidence linking his apartment to the telephonic communications that allegedly precipitated the victims' turning over their property. The affidavit submitted with the warrant application begins by describing in detail the circumstances surrounding the alleged deception of B.D. Detective McLaughlin, the affiant, then details the accounts of nine other Wellesley residents who received suspicious telephone calls of the same nature.[7]

The affidavit recounted that a number of the suspicious calls originated from a line in the defendant's building, but listed to a female in the third-floor apartment. The circumstances related in the affidavit, however, pointed to male culprits, and it was the defendant who appeared to pick up the monies demanded after one such call. As described in the affidavit, the defendant's appearance and actions while at the scene of the sting operation were consistent with those of the man who took the money from B.D. The nature of the criminal activity under investigation indicated that the perpetrator or perpetrators were keeping a record to assist in making the suspicious calls. Taken together, the facts and circumstances recited in the affidavit provided probable cause to believe that such materials and other evidence related to the criminal endeavor reasonably could be expected to be found in the defendant's first-floor apartment.[8,9]

6. *The propriety of trial after the successful motion to dismiss.*

---

[7]Of the ten occurrences related in the affidavit, the caller was identified as a male, specifically asked for $7,500 in calls to six different residents, specifically mentioned Blue Hill Avenue in describing where the resident should deliver the monies in calls to three different residents, and asked for a description of the resident's car in calls to three different residents. Detective McLaughlin affirmed that five call traces were performed, each yielding the subject telephone number at 3 Kingsdale Street in Dorchester.

[8]As noted in the affidavit, "[t]he investigation into this series of crimes indicates that the subjects have a method for identifying elderly residents of the [t]own of Wellesley, as well as the other communities they have targeted. . . . It is also clear that the subjects make notations that help them keep track of the numerous victims they target. In some cases, the subjects have called the victims more than once. It is inconceivable that they are able to memorize the numerous telephone numbers they have called, so there is probable cause to believe that they maintain some type of record, or at the very least informal notes."

[9]The defendant also contends that the judge denied him a right to confront

The defendant contends, by means of a separately filed brief pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201 (1981), that the indictments underlying his convictions were dismissed as a result of the judge's March 5, 2004, ruling on a pretrial "*McCarthy* motion" to dismiss. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). On a merely superficial reading of the judge's decision, it might appear that all nineteen counts were ordered dismissed due to the absence of an express exclusion of the larceny counts. It is abundantly clear in the body of that decision, however, that the only counts under discussion and ordered dismissed were those that alleged extortion. Therefore, trial on the counts that remained, namely the three larceny counts, was entirely proper and unaffected by the ruling on the motion.

> *Order denying motion to suppress affirmed.*
>
> *Judgments affirmed.*

---

Commonwealth witnesses when she "strongly discouraged, if not prohibited" the defendant's calling a police lieutenant to attempt to impeach the testimony of other officers regarding the defendant's statement, a contention with which we do not agree. While she may have noted to the defendant the validity of the contrary recommendation of his attorney, made to avoid calling further attention to the defendant's statement, and suggested he consider it carefully, the judge made no ruling in regard to this claim. She did not exclude the defendant from calling the witness if he chose, leaving the decision up to him.