NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-533

COMMONWEALTH

vs.

CURTIS STUBBS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury found him guilty of two counts of armed robbery, Curtis Stubbs, the defendant, appealed. We affirm.

Background. On June 5, 2021, at approximately 3:00 P.M., a man approached two males on a sidewalk in Lynn, brandished a firearm, took a gold chain from one and a bracelet and chain from the other, and fled.

A police investigation focused on the defendant. Video surveillance footage from various locations showed the robber (with a dark complexion, facial hair, and long dreadlocks and wearing a gray sweatsuit, a dark head covering, and dark footwear with white soles and red laces) arrive in a white SUV,

park the SUV, walk to the scene of the robbery, hold a handgun while pacing around the victims, receive items, run away, return to the SUV, and drive off.  The video recordings captured the plate number of the SUV, which was registered to the defendant's fiancée, who resided in Reading.  The police obtained security footage from her landlord in Reading and confirmed that the SUV was consistently parked at this address and that someone whose appearance was consistent with the robber depicted in the surveillance videos regularly appeared at the property and drove the white SUV.

On June 23, 2021, while executing an arrest warrant, the police stopped a different vehicle driven by the defendant's fiancée.  As captured on police body camera video, officers ordered the defendant, who was sitting in the front passenger seat, out of the vehicle, searched a bag strapped around his torso, found a semiautomatic handgun, and arrested him.  The defendant's complexion, facial hair, dreadlocks, head covering, and footwear looked similar to those of the robber depicted in the surveillance videos.  Officers also saw two cell phones in the vehicle, which the fiancée claimed belonged to her.  Cell tower records placed one of the phones in the general area of the robberies at approximately 3:03 P.M. on June 5, 2021.  At approximately 4:30 P.M., the phone moved to the general vicinity of the fiancée's apartment in Reading.  Officers subsequently

2

executed a search warrant at the fiancée's apartment.  In the laundry area of the apartment, the police recovered a sweatshirt and sweatpants similar in appearance to what was worn by the robber.

On June 24, 2021, both victims went to the police station. The police presented both victims, separately, with a photographic array containing the defendant's photograph.  Both victims identified the defendant as the robber.

Discussion.  1.  Sufficiency of identification evidence. In considering a challenge to the sufficiency of the evidence, we "review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Joyner, 467 Mass. 176, 179 (2014), quoting Commonwealth v. Powell, 459 Mass. 572, 579 (2011), cert. denied, 565 U.S. 1262 (2012).

The Commonwealth presented ample evidence pointing to the defendant as the robber.  Surveillance video showed that the robber drove the SUV belonging to the defendant's fiancée. Additional video from the fiancée's apartment showed that a man matching the appearance of the robber regularly appeared at the apartment and drove the SUV.  Just weeks after the robberies, the police found the defendant riding in a vehicle with his fiancée, and he had a semiautomatic handgun in a bag strapped to

3

his torso. His complexion, facial hair, dreadlocks, head covering, and footwear appeared similar to those of the robber in the surveillance videos. Cell tower records placed the fiancée's cell phone at the general time and place of the robberies and flight route to the apartment. In the laundry area of the fiancée's apartment, the police recovered a sweatshirt and sweatpants that matched the appearance of clothing worn by the robber. Through photographic arrays, both victims identified the defendant as the robber. Viewing this evidence, any rational juror could have found the defendant guilty beyond a reasonable doubt. Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

We reject the defendant's argument that the victims' testimony at trial precluded guilty verdicts. He points to both victims testifying that they did not see the robber's face, and one victim disclaiming that the defendant was the robber. Contrary to the defendant's claim, jurors were free to accept or reject such testimony and could rely upon the compelling evidence previously discussed that pointed toward the defendant's guilt. See Commonwealth v. Kapaia, 490 Mass. 787, 793 (2022) (province of jury to decide weight and credibility where "testimony from some witnesses was inconsistent" with other evidence); Commonwealth v. Clements, 436 Mass. 190, 195 (2002) ("determination of the reliability of the pretrial

4

identifications versus the in-court disavowal was a matter for the jury"); Commonwealth v. Price, 72 Mass. App. Ct. 280, 283-285 (2008) (sufficient evidence of identification although "defendant was not identified by each of his victims in court").

2. Verdicts following note on disagreement. The verdict arose through the following sequence of events. After deliberating for approximately four hours, jurors sent the judge a note stating that they could not come to an agreement. Given three and one-half days of testimony and substantial video evidence, the judge concluded that jurors had not engaged in due and thorough deliberation, brought them back to the courtroom, provided a modified version of the Tuey-Rodriguez instruction, and sent them out to resume deliberations. The following day, after deliberating for approximately two hours, jurors submitted a second note stating, "[w]e are deadlocked and find no way, at all, to come to an agreement [emphasis omitted]." This time, the judge found that jurors had engaged in due and thorough deliberations, brought them into the courtroom, provided a full Tuey-Rodriguez instruction, and sent them out to resume deliberations. Approximately twenty-five minutes later, jurors submitted a note stating, "[w]e cannot come to an agreement." Because this note was the second communication following due and thorough deliberation, the judge informed the parties that this note constituted an "unambiguous communication" from jurors that

5

they remained deadlocked, and he had "no alternative but to declare a mistrial and discharge the jury." See G. L. c. 234A, § 68C (if jurors "return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law"). After a brief discussion with counsel, the parties agreed with the judge. Before the judge could bring them into the courtroom, jurors informed the court officer that they had reached a verdict. Over the defendant's objection, the judge accepted the verdicts. The defendant contends the judge erred in doing so. We disagree.

"Judges must carefully avoid actions that might pressure jurors into compromising their genuine views of the evidence." Read v. Commonwealth, 495 Mass. 312, 322 (2025). To guard against coercion of deadlocked jurors, "judges are statutorily prohibited from ordering further deliberations by a deadlocked jury that has twice reported being at an impasse after due and thorough deliberation, unless they explicitly consent or seek clarification on the law." Id. at 323. See G. L. c. 234A, § 68C. Here, after the judge found that they had engaged in "due and thorough deliberation," G. L. c. 234A, § 68C, jurors twice reported being at an impasse, but the judge ordered further deliberations on only one of those occasions. While it is true that the judge sent them back to deliberate a total of

6

two times, the first time was not after "due and thorough deliberation," G. L. c. 234A, § 68C, and therefore fell outside the ambit of the governing statute and outside the potentially coercive circumstances that the statute guards against.  See Read, 495 Mass. at 322-323.  Thus, the judge did not violate the statute.

3.  Cross-examination of witness.  Generally, "[a] trial judge has broad discretion to limit cross-examination of a witness."  Commonwealth v. Mercado, 456 Mass. 198, 203 (2010).  "If a defendant believes that the judge improperly restrained his cross-examination of a witness, the defendant must demonstrate that the judge abused his discretion and that he was prejudiced by such restraint [quotation omitted]."  Commonwealth v. Sealy, 467 Mass. 617, 624 (2014).

At trial, the Commonwealth's forensic video analyst testified about an exhibit that consisted of a chronological compilation of surveillance videos with map references identifying the location of cameras on city streets.  On appeal, the defendant asserts that the judge abused his discretion in precluding the defendant from cross-examining this witness about whether tattoos were visible on the perpetrator's neck in surveillance videos.  We discern no error by the judge.

"Where the jury are capable of viewing video or photographic evidence and drawing their own conclusions

7

regarding what is depicted, a lay witness's testimony about the content of the video or photographs is admissible only if it would assist the jury in reaching more reliable conclusions." Commonwealth v. Grier, 490 Mass. 455, 476 (2022). Here, because the video analyst, who was not a percipient witness to the events depicted in the video, was in no better position than jurors to identify tattoos on the assailant's neck, the judge did not abuse his discretion in precluding the defendant from this line of inquiry. See Commonwealth v. Robertson, 489 Mass. 226, 236, cert. denied, 143 S. Ct. 498 (2022); Commonwealth v. Wardsworth, 482 Mass. 454, 475-476 (2019) (noting that jurors were able to view same surveillance footage that officers watched as reason against admitting opinion testimony by officers about footage). The forensic video analyst also did not "possess[] any special familiarity with the defendant that the jury lacked." Commonwealth v. Vacher, 469 Mass. 425, 442 (2014). Thus, the judge did not abuse his discretion.

Judgments affirmed.

By the Court (Desmond, Grant & Hodgens, JJ.[1]),

Clerk

Entered: June 9, 2025.

_____

[1] The panelists are listed in order of seniority.

8