## Commonwealth *vs.* Richard H. Croken.

Plymouth. April 6, 2000. - August 14, 2000.

Present: Marshall, C.J., Abrams, Greaney, Ireland, & Spina, JJ.

*Practice, Criminal,* Argument by prosecutor, New trial, Assistance of counsel. *Conflict of Interest. Constitutional Law,* Assistance of counsel. *Attorney at Law,* Conflict of interest.

At the trial of a criminal case, comments in the prosecutor's opening statement on two occasions, alleged to constitute improper argument and improper vouching for the credibility of victims, did not create a substantial risk of a miscarriage of justice in light of the evidence at trial and the judge's instructions that arguments were not evidence. [267-269]

Where affidavits in support of a criminal defendant's motion for a new trial raised an uncontested issue whether the defendant's trial counsel had an actual undisclosed conflict of interest, arising from a personal relationship during the pendency of the defendant's case that allegedly impaired the attorney's independent professional judgment, the defendant was entitled to an evidentiary hearing on his own motion. [269-276]

Indictments found and returned in the Superior Court Department on August 22, 1994.

The cases were tried before *Judith A. Cowin,* J., and a motion for a new trial was heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Sandra F. Bloomenthal* for the defendant.

*Brian D. Griffin,* Assistant District Attorney, for the Commonwealth.

Spina, J. The defendant, Richard H. Croken, was convicted on two indictments charging forcible rape of a child under sixteen years, G. L. c. 265, § 22A, and one indictment charging indecent assault and battery on a child under fourteen years, G. L. c. 265, § 13B.[1] Represented by new counsel on appeal the defendant filed a motion for a new trial raising claims of inef-

---

[1]Convictions on two other indictments (nos. 95952 and 95953) were dismissed by the trial judge as duplicative.

fective assistance of trial counsel and a related claim that trial counsel was impaired by a conflict of interest due to an undisclosed intimate relationship he had at the time of representation with an assistant district attorney (to whom he is now married) employed by the office which prosecuted the defendant. The motion was denied by the trial judge without an evidentiary hearing. The denial of the defendant's motion for new trial was consolidated with his direct appeal, in which he claims error only in the prosecutor's opening statement. The Appeals Court held that the defendant was entitled to an evidentiary hearing on his motion and ordered that the case be remanded to the Superior Court. *Commonwealth* v. *Croken*, 48 Mass. App. Ct. 32, 32-34 (1999). We granted the Commonwealth's application for further appellate review. We affirm the convictions, vacate the order denying the defendant's motion for a new trial, and remand the case to the Superior Court for an evidentiary hearing on that motion.

We summarize the evidence, reserving other details for discussion of the issues raised on appeal. The defendant frequently babysat for the victims, whom we shall call Steve and Chris. Steve and Chris are cousins, and they are related to the defendant by marriage. One night when Chris was eight years old he slept at the defendant's home during a February vacation. The defendant fondled the boy's penis during the night and performed fellatio on him. Chris struck the defendant, then ran into the bathroom. The next morning the defendant told Chris not to tell anyone what happened or he would get hurt and disappear, and his mother would never find him. On several other occasions the defendant put his fingers or his penis into Chris's anus. When Chris was ten or eleven years old the defendant again fondled his penis and performed fellatio on him during the night. He also put his penis into the boy's anus. Chris first disclosed these events after Steve made a similar disclosure in 1993.

Steve visited the defendant's family during the summer of 1983 or 1984. He was eight or nine years old at the time. The defendant put his arm around the boy, who was watching television, then put his hand down Steve's pants and fondled his penis. The defendant threatened to hurt Steve if he told anyone.

1. *Prosecutor's opening statement.* In his direct appeal the defendant raises one issue, namely, that the prosecutor improperly made argument and improperly vouched for the

credibility of the victims on two occasions during his opening statement. There was no objection, so we review the matters under the standard of a substantial risk of a miscarriage of justice. *Commonwealth* v. *Thomas*, 400 Mass. 676, 682 (1987).

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978), quoting *Posell* v. *Herscovitz*, 237 Mass. 513, 514 (1921). "This expectation must, of course, have been reasonable. and grounded in good faith." *Commonwealth* v. *Fazio*, *supra* at 456. It is not an opportunity for argument. See *United States* v. *Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). Counsel in an opening statement may not vouch for the credibility of a key witness. See *Commonwealth* v. *Trigones*, 397 Mass. 633, 642 (1986).

In the first instance the prosecutor said, "You'll notice that the indictments charge a broad period of time, and this is simply because of the age of the victims. Young boys don't keep log books when they're being molested." It was bolstered by a later remark that the victims acted courageously by testifying. This was improper, as it was argument. However, it does not stray so far from the line as to require reversal. Chris testified that he did not "keep track of dates." The prosecutor properly could have alerted the jury that the case was likely to involve questions of fading memory, which is the import of the comment. The judge instructed the jury immediately before the openings that statements of counsel were not evidence, diffusing any effect of the error. See *Commonwealth* v. *Fazio, supra* at 457-458. The argument did not create a substantial risk of a miscarriage of justice. The claim that the statement constitutes improper vouching for the credibility of witnesses, *Commonwealth* v. *Trigones, supra* at 642, has no merit because the prosecutor was not speaking "out of personal knowledge." *Commonwealth* v. *Olszewski*, 401 Mass. 749, 760 (1988), *S.C.*, 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994).

The prosecutor later described several concerns Chris had about coming forward, including "somehow he would be labeled a homosexual." Chris testified about the other concerns substantially as the prosecutor represented, but he never mentioned a fear of being labeled a homosexual. The defendant, who is unaided by any presumption, has failed to make the necessary showing that the prosecutor had no good faith basis

for this overstatement in the opening. See *Commonwealth* v. *Fazio, supra* at 454-455, 456. The prosecutor did not pander to the emotions of the jury, and did not attempt unfairly to encourage the jury to hold the defendant in disdain. The comment was not about the defendant, but what Chris was expected to say about himself. Contrast *Commonwealth* v. *Clary,* 388 Mass. 583, 592 (1983) ("prosecutor's insinuations regarding the defendant's sexual preference clearly were likely to instigate prejudice against her"). The subject of homosexuality thereafter effectively disappeared. As with the first statement, there was no vouching for witnesses. See *Commonwealth* v. *Olszewski, supra.* There was no error.

The defendant also argues that the prosecutor's opening statement caused the judge to become biased. He relies on two insignificant occurrences. The first came during a brief lobby conference during which the judge tersely inquired as to the possibility of a plea. The inquiry was nothing more than a delayed commonplace occurrence. The second occurrence involved the judge's refusal to preclude a witness, who was under a sequestration order, from sitting in the court room after his testimony had concluded. The judge inquired into the likelihood that the witness would be recalled, and implicitly concluded that there was none. The witness was not mentioned on the defendant's witness list, and counsel made no showing of a need to exclude the witness from the court room. The witness was never recalled. There is no indication that the witness violated the sequestration order by disclosing his testimony to any witness, or otherwise. It was within the judge's discretion to modify the sequestration order as she did. See *Commonwealth* v. *Gogan,* 389 Mass. 255, 261 (1983); *Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 223 (1974). There was no abuse of discretion, and there is nothing in the record to suggest that the judge was anything but impartial.

2. *Motion for a new trial.* The defendant argues that the motion judge, who was also the trial judge, erred by denying his motion for a new trial without an evidentiary hearing after concluding that it did not raise a substantial issue. The thrust of the motion was that trial counsel was impaired by an actual conflict of interest created by his intimate relationship with an assistant district attorney, now his wife, who was employed by the same office that prosecuted the defendant, and that he never disclosed the conflict to the defendant. Enmeshed in this argument are several claims of ineffective assistance of counsel.

Rule 30 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 900 (1979), provides that a trial judge "upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Rule 30 (c) (3) provides that a defendant "shall file and serve and each party opposing a motion may file and serve affidavits where appropriate in support of his respective position. The judge may rule on the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). See *Commonwealth* v. *Stewart*, 383 Mass. 253, 260 (1981). "In determining whether a 'substantial issue' meriting an evidentiary hearing under rule 30 has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised. We examine the affidavit[s] in light of these standards." *Id.* at 257-258.

Affidavits of the defendant and his appellate counsel were filed with his motion. An affidavit by the prosecutor was filed with the Commonwealth's opposition to the motion. The following facts are undisputed or appear from those affidavits. Attorney Robert LaLiberte was appointed to represent the defendant from his arraignment in the District Court on June 3, 1993, through sentencing in the Superior Court on July 18, 1996, and until August 13, 1996, when appellate counsel was retained. For much if not all of that time, LaLiberte was involved in a close relationship with an assistant district attorney whom we, like the Appeals Court, shall call Jane Doe.

Doe was employed as an assistant district attorney for the Plymouth district from 1989 through December, 1994. Thereafter she practiced law in the private sector until April, 1997; then served as an attorney for the Department of Social Services until February, 1998. In March, 1998, she returned to a position of supervising assistant district attorney in the District Court for the Plymouth district. At the start of LaLiberte's representation, one of Doe's colleagues was James M. Sullivan, the assistant district attorney in Plymouth County who was responsible for prosecuting the defendant throughout the proceedings in the trial court. Area telephone directories for July, 1996, through June, 1998, listed LaLiberte and Doe at the same residential address, a home purchased by LaLiberte in July, 1995. Doe and LaLiberte lived together during a portion of the time that LaLiberte represented the defendant.

Much more than this we do not know. Nor, apparently, does the defendant, whose affidavit states that he knew during the representation that LaLiberte had a girl friend with whom he was living, but that he did not know her name or her occupation. The defendant avers that he would never have consented to LaLiberte's representing him had he known that she worked for the district attorney's office for the Plymouth district. He became aware of this fact only by chance. His appellate counsel was speaking casually one day at a court house with an assistant district attorney, who informed her that Doe and LaLiberte were now married. The date of that marriage is not known. Appellate counsel investigated and brought to light some of the few details that are known. As for Doe's involvement in this case, Sullivan's affidavit states that she did not "have any connection [with] or involvement in" the defendant's prosecution. His affidavit does not dispute the contention in the defendant's affidavit that LaLiberte did not disclose to the defendant the fact of his relationship with Doe. The Commonwealth did not submit affidavits of Doe or LaLiberte.

The judge in this case did not say in her memorandum of decision that she disbelieved the defendant's affidavit (or, for that matter, any other affidavit). See, e.g., *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 513, 520 (1999). Instead she said, citing *Commonwealth* v. *Carver*, 33 Mass. App. Ct. 378 (1992), that the defendant's motion did not raise a substantial issue. *Carver* is significantly different from this case. In *Carver*, the motion for a new trial was accompanied by a sole affidavit the substance of which was not compatible with expert testimony introduced at trial; and the motion judge, who had been the trial judge, "was entitled to use his knowledge and evaluation of the evidence at trial" in deciding the merits of the motion. *Id.* at 381. Here, by contrast, the claim of conflict of interest raised in the defendant's motion was wholly unrelated to any evidence raised at trial. In any event, the Commonwealth does not appear to contest the factual assertions made in the affidavits submitted by the defendant.

The judge explicitly held that the motion and the affidavits indicated no actual or genuine conflict of interest. We agree that the motion and the affidavits were inadequate as a matter of law to warrant the conclusion that there was an actual or genuine conflict. If we thought otherwise, a new trial would be required without any showing of prejudice to the defendant. Our deci-

sions distinguish between actual and potential conflicts of interest. "An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of trial counsel is impaired, either by his own interests, or by the interests of another client." *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986). An actual conflict requires reversal of a defendant's conviction under art. 12 of the Massachusetts Declaration of Rights without the necessity of showing that the conflict resulted in any prejudice. See *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982).[2] "However, where a defendant can show nothing more than a potential conflict, the conviction will not be reversed except on a showing of actual prejudice." *Commonwealth* v. *Fogarty*, 419 Mass. 456, 459 (1995). Actual prejudice is measured against the standard in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), as in cases involving claims of ineffective assistance of counsel. See, e.g., *Commonwealth* v. *Shraiar*, *supra* at 25.

Most of our conflict cases have to do with problems arising from the representation of parties with conflicting interests by members of the same law firm. See, e.g., *Commonwealth* v. *Martinez*, 425 Mass. 382, 387-391 (1997); *Commonwealth* v. *Hodge*, *supra*. Cf. *Commonwealth* v. *Fogarty*, *supra*; *Commonwealth* v. *Epsom*, 399 Mass. 254, 261-263 (1987); *Commonwealth* v. *Michel*, 381 Mass. 447 (1980); *Commonwealth* v. *Leslie*, 376 Mass. 647 (1978), cert. denied, 441 U.S. 910 (1979); *Commonwealth* v. *Leo*, 11 Mass. App. Ct. 283, 285-287 (1981). Few have to do with anything like the particular problem presented in this case.

At the time LaLiberte represented the defendant, the Canons of Ethics and Disciplinary Rules were still in effect. See S.J.C. Rule 3:07, 382 Mass. 769 (1981), as amended, 422 Mass. 1301 (1996).[3] Disciplinary Rule 5-101 (A), as appearing in 382 Mass. 779 (1981), provided: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client

---

[2]"When a genuine conflict exists, a defendant may consent to continued representation by his attorney 'so long as his consent is voluntarily, knowingly, and intelligently made.' " *Commonwealth* v. *Martinez*, 425 Mass. 382, 392 (1997), quoting *Commonwealth* v. *Goldman*, 395 Mass. 495, 498, cert. denied, 474 U.S. 906 (1985).

[3]As of January 1, 1998, however, this court adopted the Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998).

will be or reasonably may be affected by his own financial, business, property, or personal interests." A lawyer's personal interests surely include his interest in maintaining amicable relations with his relatives, his spouse, and anyone with whom he is comparably intimate. This interest is, of course, often significantly pecuniary in character, but it also has irreducible emotional and moral dimensions, and it heavily bears on how any ordinary human being goes about making important decisions. It follows that in a case where a lawyer's representation of a client may be significantly limited by his ties to his relatives and intimate companions, professional ethics are implicated just as they would in a case where the lawyer represents a second client with litigation interests potentially adverse to those of the first client. See Restatement (Third) of the Law Governing Lawyers § 206 (Proposed Final Draft No. 1, 1996).

We do not here decide the range of circumstances in which such ties may trigger the requirements of the DR 5-101 (A), or its analog, Mass. R. Prof. C. 1.7 (b), 426 Mass. 1330 (1998). We do hold that, where a criminal defense lawyer represents a client and a close relative or an intimate companion is a colleague of the prosecutor who seeks to convict the client, the requirements of the rule must be met. See Massachusetts Bar Association, Committee on Professional Ethics, Opinion No. 95-3 (relative of a district attorney could represent criminal defendants whom the district attorney's office prosecuted, provided [1] the relative not represent clients in cases in which the district attorney is involved; and [2] the conflict be fully disclosed in writing and consented to by the client); ABA Criminal Justice Section, Ethical Problems Facing the Criminal Defense Lawyer 276-290 (1995); C.W. Wolfram, Modern Legal Ethics § 7.6.6 (1986). See also *People* v. *Jackson*, 167 Cal. App. 3d 829 (1985).

Before agreeing to represent the defendant, LaLiberte should have determined whether he reasonably believed his representation would be adversely affected by his relationship with Doe. If he concluded that it would, then he should have withdrawn from the case. If, on the other hand, he determined that he could represent the defendant vigorously, LaLiberte should then have asked the defendant whether he consented to being represented by him in light of his relationship with Doe. Informed consent would of course include disclosure of the fact that Doe was an assistant district attorney who worked in the

same office as the prosecutor who was trying to convict the defendant.[4] Cf. *Commonwealth* v. *Martinez,* 425 Mass. 382, 392-394 (1997).

We think that the motion and affidavits raise a substantial question as to whether there was an actual conflict. The issue is certainly serious. Although factually underdeveloped, the papers demonstrate sufficient basis for a reasonable belief that the core of the attorney-client relationship might have been impaired, and that some probing of the matter by way of an evidentiary hearing was required. As the Appeals Court aptly noted, "[t]he defendant's allegations lack completeness, but that is understandable given the natural privacy of the circumstances surrounding the relationship between LaLiberte and Jane Doe which culminated in marriage." *Commonwealth* v. *Croken,* 48 Mass. App. Ct. 32, 34 (1999). For us to require more from the defendant as a prerequisite to an evidentiary hearing would be unreasonable. We are not persuaded by the Commonwealth's arguments to the contrary.

Marital and similar intimate relationships between lawyers have potential for creating unique problems. "The marriage relationship may be conducive to inadvertent breaches of confidentiality. A spouse may have knowledge of out-of-town investigative trips at or around the time of preparation for a particular case; clients and witnesses may contact the lawyer at home or leave messages on the home answering machine that may reveal a tactic or a confidence. Working papers left at home or work performed at home may reveal confidences of a client. The needs of a lawyer to work early or late or on weekends may give rise to the need for explanation in a marriage relationship that could inadvertently reveal client confidences or secrets." ABA Criminal Justice Section, Ethical Problems Facing the Criminal Defense Lawyer 248 (1995). In addition, a "potential conflict of interest that may arise can be financial or personal. A district attorney or public defender may have a special interest in the outcome of a case based on a concern for a promotion or political benefit for one's spouse. A

---

[4]"A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved." Mass. R. Prof. C. 1.7 comment [4], 426 Mass. 1330 (1998).

lawyer's loyalty to a client may be impaired by a personal interest in the success of a spouse . . . ." *Id.* at 249. We see no appreciable difference between marriage and other intimate relationships in this regard.

Sullivan's affidavit leaves some key questions unanswered, and it raises serious questions because of what it does not say. Sullivan simply did not have the information to tell what Doe knew and did. Rather than contradict the defendant's claims (which by itself would likely have resulted in a need for an evidentiary hearing, see *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. 403, 406 [1983]), Sullivan's affidavit sidesteps them. It says that "[a]t no time did Attorney Doe have any connection or involvement in the prosecution of the defendant," and "[a]t no time did Attorney Laliberte disclose confidential information to me." Curiously missing from Sullivan's affidavit is any averment that Attorney Doe never discussed the case with him or disclosed confidential or other information about the case, even inadvertently. We also find it unsettling that in an area where forthrightness should be the rule, the integrity of a member of the profession having been questioned, the Commonwealth offered no affidavit from either LaLiberte or Doe. The Appeals Court's view of this was that "[t]he absence of such an affidavit suggests that the defendant's allegations may not be far from the mark." *Commonwealth* v. *Croken, supra* at 35. We agree.

The Commonwealth would have done better in this case to submit an affidavit by Doe, who at present is in its employ. Doe could aver — assuming, of course, that the averments were true — that she never worked on the case, that she never discussed the case with LaLiberte or anyone from the district attorney's office, that no information concerning the case was ever made known to her or conveyed by her to the office or to LaLiberte, and that she had never understood that whether she regained employment with the district attorney's office would depend in any way on how LaLiberte handled his representation of the defendant. The existence of a strictly observed office policy designed to eliminate even inadvertent breaches of confidence in circumstances involving interoffice relationships, whose numbers appear to be increasing significantly, is also something that could have been included in an affidavit. Similarly, LaLiberte could have submitted an affidavit stating — again, assuming it were true — that he never discussed the case with Doe, and that he never expected that his performance in this case

would affect Doe's chances of becoming reemployed by the district attorney's office. We do not imply that affidavits addressing these particular issues would have obviated the need for a hearing. That is a question that can only be answered on a case-by-case basis. There are obvious and serious questions in this case that should have been addressed, but were not. The woeful inadequacy of the Commonwealth's response to the defendant's motion and affidavits compel the need for an evidentiary hearing.

The defendant also has raised a substantial question as to the existence of a "tenuous" or potential conflict resulting in material prejudice to his case, presented as six claims of ineffective assistance of counsel. Sullivan's affidavit, as we have explained, was insufficient to alleviate our concerns as to these questions. A hearing on the questions was therefore warranted. Cf. *Commonwealth* v. *Saarela, supra.* It is undisputed that the defendant did not consent to the potential conflict created by LaLiberte's relationship with Doe. Cf. *Commonwealth* v. *Hodge*, 386 Mass. 165, 170 (1982). "While ordinarily we defer to the discretion of a trial judge on whether a motion for new trial requires an evidentiary hearing . . . the allegations in the defendant's affidavit, if true, raise serious issues as to the adequacy of the appointed trial counsel's interest in preparing and conducting the defense" (citation omitted). *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). See *Commonwealth* v. *Trung Chi Truong*, 34 Mass. App. Ct. 668, 675 (1993). Cf. *Commonwealth* v. *Rosado*, 408 Mass. 561, 568 (1990).

3. *Scope of the evidentiary hearing to be held on remand.* The hearing must not intrude unnecessarily on the privacy of LaLiberte and Doe. The details of their relationship need not be explored, as it is not disputed that LaLiberte and Doe were involved in an intimate relationship during most of LaLiberte's representation of the defendant. We think the hearing should focus upon (1) whether an actual conflict of interest existed between LaLiberte and the defendant; and (2) whether the potential conflict, i.e., the relationship between LaLiberte and Doe, caused any material prejudice to the defendant, including (a) whether LaLiberte and Doe discussed the defendant's case, and if so, what was said; (b) whether Doe discussed the case with anyone in the district attorney's office, or in the office of the Department of Social Services if that office had any involve-

ment in this matter, and if so, what information was disclosed which may have harmed the defense; (c) whether, during LaLiberte's representation of the defendant, Doe had any expectation of returning to the district attorney's office, and if so, whether LaLiberte's representation was directly or indirectly affected thereby (e.g., did LaLiberte show any special deference to the prosecutor that harmed the defense). The claims of ineffective assistance of counsel must also be examined in light of the potential conflict.

The convictions are affirmed. The order denying the motion for a new trial is vacated and that matter is remanded to the Superior Court for an evidentiary hearing consistent with this opinion. The motion for a new trial will retain its status of having been presented with the direct appeal. See *Commonwealth v. Hallet*, 427 Mass. 552, 554 (1998).

*So ordered.*