## COMMONWEALTH *vs.* JOHN STOTE.

Hampden. November 3, 2009. - March 5, 2010.

Present: MARSHALL, C.J., IRELAND, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Conflict of Interest. Attorney at Law,* Conflict of interest. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel.

During the appeal from the defendant's conviction of murder in the first degree, defense counsel's intimate personal relationship with an assistant district attorney in the appellate division of the office that represented the Commonwealth on appeal (who did not participate in the preparation of the Commonwealth's brief on appeal or discuss any aspect of the defendant's case with the trial prosecutor, who also handled the appeal) did not deprive the defendant of the effective assistance of counsel, where counsel's relationship, which did not involve cohabitation, did not give rise to either an actual conflict of interest [217-221] or a potential one [221-224].

Reminder to members of the bar of their professional obligation under Mass. R. Prof. C. 1.7 (b) to disclose to their clients any intimate personal relationship that might impair their ability to provide untrammeled and unimpaired assistance of counsel. [224]

INDICTMENT found and returned in the Superior Court Department on November 22, 1995.

Following review by this court, 433 Mass. 19 (2000), a motion for a new trial, filed on May 27, 2003, was heard by *Daniel A. Ford,* J.

A request for leave to appeal was allowed by *Sosman,* J., in the Supreme Judicial Court for the county of Suffolk.

*Bernard Grossberg* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. At issue in this case is whether, during the defendant's appeal from his conviction of murder in the first degree, defense counsel was burdened by an actual or potential conflict of interest arising from his intimate personal relationship with an assistant district attorney in the appellate division of the office that represented the Commonwealth on appeal, such that the defendant was deprived of the effective assistance

Commonwealth *v.* Stote.

of counsel on appeal. A single justice in the county court, acting as a gatekeeper pursuant to G. L. c. 278, § 33E, allowed the defendant to proceed with this appeal from the denial of his motion for a new trial to the extent that it presented that issue.[1] For the reasons that follow, we affirm the denial of the defendant's motion for a new trial.

*Background.* The defendant, John Stote, was convicted in 1997 of murder in the first degree. After plenary review of the record, we affirmed the conviction and the denial of Stote's first motion for a new trial (first motion). *Commonwealth* v. *Stote,* 433 Mass. 19 (2000). Stote's attorney, William T. Walsh, Jr., represented him at trial, in connection with his first motion for a new trial, and on appeal. Represented by new counsel, Stote then filed a second motion for a new trial (second motion). In the second motion, Stote argued, inter alia, that Walsh engaged in intimate relationships with the trial prosecutor who represented the Commonwealth both at trial and on appeal, and with a different prosecutor in the appellate division of the same district attorney's office (ADA), that neither relationship was disclosed to Stote, and that these relationships gave rise to an actual conflict of interest.[2] A judge in the Superior Court, who was also the trial judge, denied the motion without an evidentiary hearing. On Stote's petition filed pursuant to the gatekeeper provision of G. L. c. 278, § 33E, the single justice allowed Stote to raise the alleged conflict of interest arising from Walsh's relationship with the appellate division prosecutor. She otherwise denied the petition.[3]

---

[1] A single justice denied the defendant's request to appeal on his claim that a conflict of interest arose from defense counsel's intimate relationship with the trial prosecutor — it had ended seventeen years before the defendant's trial — and that defense counsel deprived him of effective assistance at trial in other respects. "[T]he decision of the single justice, acting as a gatekeeper pursuant to G. L. c. 278, § 33E, is 'final and unreviewable.' " *Commonwealth* v. *Herbert,* 445 Mass. 1018, 1018 (2005), quoting *Commonwealth* v. *Perez,* 442 Mass. 1019, 1019 (2004).

[2] Although the assistant district attorney who was the trial prosecutor also represented the Commonwealth in connection with the defendant's appeal, we refer to her as the "trial prosecutor" to distinguish her from the assistant district attorney in the appellate division, whom we refer to as an "ADA," who did *not* represent the Commonwealth in connection with prosecuting this defendant, either at trial or on appeal.

[3] After the single justice's decision, Stote filed another motion for a new

*Facts.* Ordinarily, we accord " 'special deference to the factual findings' of a judge who ruled on the defendant's motion for a new trial 'where, as here, the motion judge also presided at the defendant's trial.' " *Commonwealth* v. *Pillai,* 445 Mass. 175, 185 (2005), quoting *Commonwealth* v. *Zagrodny,* 443 Mass. 93, 103 (2004). Here, however, the judge denied the second motion based on the papers, ruling that the affidavits did not raise an issue warranting an evidentiary hearing.[4] Furthermore, in this case, the facts advanced at trial and the credibility of the witnesses who testified at trial — the key matters as to which we defer to the judge — are immaterial to the question whether Stote received the effective assistance of counsel on appeal. In these circumstances, we are in as good a position as the judge to assess the documentary record underlying his decision on the second motion. That record reveals the following facts.

While he was representing Stote, Walsh and the ADA attended a concert together in late March, 1999, and began dating, seeing each other on weekends, until approximately April, 2000. When this relationship began, Walsh had already prepared and filed Stote's first motion. During the course of Walsh's relationship with the ADA, the first motion was denied after a nonevidentiary hearing, and Walsh prepared and, possibly, filed Stote's appellate brief.[5] The relationship between Walsh and the

trial (third motion), along with other motions, in the Superior Court. Those motions were denied, and Stote again petitioned for leave to appeal under the gatekeeper provision of § 33E. A different single justice denied that petition. As no appeal lies from the gatekeeper's decision, see *Commonwealth* v. *Herbert, supra,* the denial of the third motion is not before us.

[4]"Appellate courts generally defer to the sound discretion of the trial judge on whether a motion for a new trial requires an evidentiary hearing or whether it can be decided on the basis of the facts alleged in the affidavits." *Commonwealth* v. *DeVincent,* 421 Mass. 64, 67 (1995), citing *Commonwealth* v. *Licata,* 412 Mass. 654, 660 (1992). While we do not disturb the judge's decision to rule on the papers in this case, we emphasize that a judge facing similar factual allegations should err on the side of holding an evidentiary hearing and allowing cross-examination. "[G]iven the natural privacy of the circumstances surrounding" intimate relationships, *Commonwealth* v. *Croken,* 48 Mass. App. Ct. 32, 34 (1999), *S.C.,* 432 Mass. 266 (2000), the temptation is strong for the affiants to minimize their description of their relationship, and it is difficult for the defendant to present contrary evidence by way of affidavits.

[5]Our records indicate that Stote's appellate brief was filed on April 14, 2000. It is not clear from the affidavits whether the relationship between Walsh and the ADA ended before the brief was filed.

ADA ended before the Commonwealth filed its appellate brief and before oral argument took place. In his own affidavit, Stote attests that the relationship was not disclosed to him and that if he had known of the relationship, he would not have had Walsh represent him.

The affidavits of Walsh and the ADA reveal the following facts about the nature of their relationship. The ADA attests in her affidavit that she and Walsh did not live together at any time during their relationship. Walsh similarly attests that they lived separately. The ADA also states that she does not know whether the relationship was "monogamous." Although neither affidavit states whether the relationship was sexual, we can safely assume that it was, given that the relationship lasted more than one year, the participants were mature adults, neither of them has denied it, and the ADA's reference to a "monogamous" relationship implies as much. The ADA further states that Walsh did not bring legal work to her home, did not to her knowledge receive telephone calls at her home regarding legal matters, and did not discuss Stote's case with her or disclose confidential information to her. She states that, while she and Walsh were seeing each other, they did not "substantively" discuss their "respective legal concerns"[6] and that their work did not "overlap in any respect." Although she was aware that Walsh was working on "an appellate brief," she did not know of its contents, and "even if" she knew the defendant's name "at that time," she did not know anything about Stote's case until she read our 2000 opinion, which was issued after the relationship ended. Walsh similarly attests that he did not discuss Stote's case or appeal with the ADA and that he did not disclose any confidential information to her. Shortly after the relationship ended, according to the ADA's affidavit, Walsh began living with another woman whom he later married.

The ADA's affidavit also indicates that she did not participate in the preparation of the Commonwealth's brief in Stote's appeal. The trial prosecutor, in her affidavit, attests that she alone wrote the Commonwealth's opposition to Stote's first motion and, later, the Commonwealth's appellate brief without the assistance of anyone in the district attorney's office, other than submitting

---

[6]The affidavit is unclear as to any "legal concerns" that may have been discussed.

the brief to her superiors for approval. The trial prosecutor further states that she did not discuss any aspect of the Stote case with the ADA.

Although, in accordance with the single justice's decision, we do not consider whether Stote is entitled to a new trial due to any alleged conflict of interest arising from Walsh's previous relationship with the trial prosecutor, some facts concerning that relationship are relevant to our decision. In 1979 and 1980, Walsh and the trial prosecutor dated, but lived separately.[7] Their dating relationship ended amicably in 1980, some seventeen years before Stote's trial. Walsh and the trial prosecutor maintained a cordial and professional relationship thereafter. Both Walsh and the trial prosecutor eventually went on to marry others, in Walsh's case, as stated above, after his relationship with the ADA ended.

*Discussion.* "An element of the fundamental right to counsel under art. 12 of the Massachusetts Declaration of Rights is the defendant's right to the full and undivided loyalty of his attorney. A defendant is entitled to the untrammeled and unimpaired assistance of counsel free from any conflict of interest." *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986), citing *Commonwealth* v. *Davis*, 376 Mass. 777, 780 (1978). Under art. 12, if a defendant establishes an actual conflict of interest, "he is entitled to a new trial without a further showing; he need not demonstrate that the conflict adversely affected his lawyer's performance or resulted in actual prejudice."[8] *Commonwealth* v. *Mosher*, 455 Mass. 811, 819 (2010), and cases cited. *Commonwealth* v. *Croken*, 432 Mass. 266, 272 (2000) (*Croken*). If a defendant can establish no actual conflict, but only a potential conflict of interest, "the conviction will not be reversed[9] except

[7]Stote asserts that Walsh and the trial prosecutor, contrary to their affidavits, did in fact live together. In support of this assertion, he relies on an affidavit executed by a member of the Massachusetts bar and submitted in support of the third motion. See note 2, *supra*. That affidavit is not properly part of the record before us. In any event, if true, that fact would not affect our conclusion for the reasons explained *infra*.

[8]In this respect, art. 12 of the Massachusetts Declaration of Rights provides broader protection than the Sixth Amendment to the United States Constitution, under which, even where there is an actual conflict of interest, the defendant must establish that the conflict adversely affected his lawyer's performance. *Cuyler* v. *Sullivan*, 446 U.S. 335, 350 (1980).

[9]Walsh's relationship with the ADA could not have given rise to any conflict

upon a showing of material prejudice." *Commonwealth* v. *Shraiar, supra*. See *Commonwealth* v. *Mosher, supra* at 823. "Actual prejudice is measured against the standards in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), as in cases involving claims of ineffective assistance of counsel."[10] *Croken, supra* at 272, citing *Commonwealth* v. *Shraiar, supra* at 25.

1. *Actual conflict.* "An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of . . . counsel is impaired, either by his own interests, or by the interests of another client." *Commonwealth* v. *Shraiar, supra* at 20. It is "one in which prejudice is 'inherent in the situation,' such that no impartial observer could reasonably conclude that the attorney is able to serve the defendant with undivided loyalty." *Commonwealth* v. *Mosher, supra* at 819-820, quoting *Commonwealth* v. *Epsom*, 399 Mass. 254, 262 (1987). It is the defendant's burden to prove an actual conflict of interest by presenting "demonstrative proof detailing both the existence and the precise character of this alleged conflict of interest; we will not infer a conflict based on mere conjecture or speculation." *Commonwealth* v. *Shraiar, supra*.

In pertinent part, the rules of professional conduct, which were in effect at the time of Stote's appeal and of Walsh's relationship with the ADA, provide: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client *or to a*

---

of interest at trial because it did not begin until well after Stote was convicted. Stote's claim is one of ineffective assistance of appellate counsel. If Stote established this, he would be entitled at this juncture to a new appeal, not to a new trial.

[10]Once a defendant's direct appeal from his conviction of murder in the first degree has been reviewed under G. L. c. 278, § 33E, "[a]ny claim of ineffectiveness of counsel presented in a subsequent appeal from the denial of a motion for a new trial, authorized by a single justice of this court, would not be tested under the § 33E standard but on the applicable constitutional standards, State and Federal." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 n.1 (1992). This is so even where, as here, trial counsel and appellate counsel were the same and the claim of ineffective assistance is therefore raised for the first time in a subsequent motion for postconviction relief. See *Commonwealth* v. *Phinney*, 446 Mass. 155, 162-163 & n.10, 168 (2006) (in appeal authorized by gatekeeper, applying standard as set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974], to ineffective assistance claim, where trial counsel represented defendant on direct appeal).

*third person, or by the lawyer's own interests,* unless (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation" (emphasis added). Mass. R. Prof. C. 1.7 (b), 426 Mass. 1330 (1998). Interpreting DR 5-101A, as appearing in 382 Mass. 779 (1981), the predecessor to rule 1.7, we have said that "[a] lawyer's personal interests surely include his interest in maintaining amicable relations with his relatives, his spouse, and anyone with whom he is comparably intimate." *Croken, supra* at 273. Where a criminal defense lawyer "represents a client and a close relative or an intimate companion is a colleague of the prosecutor who seeks to convict the client, the requirements of the rule must be met."[11] *Id.* In *Croken,* the defendant's trial counsel was in a long-term relationship with an attorney who was for a time an assistant district attorney and a colleague of the trial prosecutor. *Id.* at 270. The couple were in this relationship "[f]or much if not all of" the time that defense counsel represented the defendant and lived together for some of that time. *Id.* Defense counsel's representation of the defendant lasted over three years, from the arraignment until the retention of appellate counsel. *Id.* The couple eventually married; the record before this court did not reveal exactly when the marriage took place. *Id.* at 271. While the defendant was aware that his trial counsel had a "girl friend," neither her name nor her occupation was disclosed to him. *Id.* We concluded that the motion and affidavits submitted by the parties, which notably did not include affidavits from defense counsel or the assistant district attorney who later became his wife, were inadequate to establish that an actual conflict of interest existed. *Id.* The motion and affidavits *did,* however, raise "a substantial question as to whether there was an actual conflict" and demonstrated "sufficient basis for a reasonable belief that the core of the attorney-client relationship might have been impaired, and that some probing of the matter by way of an evidentiary hearing was

---

[11]Under our holding in *Commonwealth v. Croken,* 432 Mass. 266, 273 (2000), Walsh was obligated to disclose to Stote his relationship with the ADA. It is undisputed that he did not do so. Stote thus did not have an opportunity to "consent[] after consultation." Mass. R. Prof. C. 1.7 (b) (2), 426 Mass. 1330 (1998). We need not decide at what point Walsh became obligated to disclose the relationship to Stote, whom he had been representing for some time before his relationship with the ADA began.

required." *Id.* at 274. We remanded the matter to resolve the factual questions left open by the record, particularly concerning the extent to which defense counsel's then girl friend might have discussed the case with defense counsel or with the prosecutor, the extent to which she might have been exposed to confidential information, and the extent to which the relationship might have affected defense counsel's representation of the defendant. See *id.* at 275-277.

If the fact of the relationship in *Croken,* which was serious enough to lead to cohabitation (during the representation), was not sufficient *standing alone* to establish an actual conflict of interest, the relationship between Walsh and the ADA *standing alone* is similarly not sufficient. Walsh and the ADA's year-long relationship was surely more than a brief, casual affair, yet we cannot conclude that it was an intimate relationship similar to a marriage. Particularly as they did not live together, their relationship was not conducive to "inadvertent breaches of confidentiality," as cohabitation or marriage is.[12] *Id.* at 274, quoting ABA Criminal Justice Section, Ethical Problems Facing the Criminal Defense Lawyer 248 (1995) (Ethical Problems) (noting potential for such breaches occasioned, e.g., by receiving telephone calls and messages at home, by working at home, or by explaining absence from home). Nor is there reason to believe that Walsh and the ADA developed a financial or personal interest in each other's careers, that is, that the ADA's professional advancement would have redounded to Walsh's benefit or vice versa. Cf. *Croken, supra,* quoting Ethical Problems, *supra* at 249 ("district attorney or public defender may have a special interest in the outcome of a case based on a

---

[12]In his brief, Stote makes much of the fact that Walsh's and the ADA's affidavits, as well as the judge's decision, do not state whether their relationship was sexual. Even assuming, as we do, that it was a sexual relationship, that fact alone would not establish that the relationship was an intimate relationship similar to a marriage. The "unique problems" created by such relationships, which we discussed in *Commonwealth v. Croken, supra* at 274-275, arise largely from the day-to-day practicalities of sharing a home, from the couple's mutual financial and personal interest in each other's success, in addition to the couple's emotional intimacy. A nonsexual cohabitation may give rise to many of the same problems as a marriage, while a brief, casual sexual relationship may give rise to few, if any, of them. The sexual nature of a relationship is, therefore, one factor to be considered in the case-by-case analysis whether a relationship gives rise to a conflict of interest.

concern for a promotion or political benefit for one's spouse"). Because the ADA was *not* handling the Commonwealth's case on appeal, there is no reason to believe that the Commonwealth's success in that appeal could have resulted in any professional benefit for her. In other words, Walsh's relationship with the ADA gave him no incentive to provide less than fully vigorous representation of his client.

In *Croken*, *supra* at 274-276, although we could not conclude on the papers that there was in fact an actual conflict, we did conclude that the defendant's motion and affidavits raised substantial questions that had not been adequately answered by the Commonwealth. Here, in contrast, the Commonwealth has provided evidence negating the existence of an actual conflict. Both Walsh and the ADA swear that no confidential information about Stote was disclosed, and there is nothing in the record to suggest otherwise. The ADA further swears that she had no involvement in the Commonwealth's side of Stote's appeal and knew nothing about the case until she read our opinion. This is corroborated by the trial prosecutor, who swears that she worked alone on the Commonwealth's brief and never discussed the case with the ADA. Walsh, the ADA, and the trial prosecutor, all officers of the court, bear a duty of candor toward the tribunal, see generally Mass. R. Prof. C. 3.3, 426 Mass. 1383 (1998), and the consequences for presenting false or misleading evidence to the court are potentially very serious.[13] On this record, the judge properly concluded, without the need for an evidentiary hearing, that Walsh's representation of Stote was not impaired by his relationship with the ADA, that is, that there was no actual conflict of interest. See Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001) ("judge may rule . . . on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits").

2. *Potential conflict.* "Where no actual or genuine conflict exists, an attorney's personal interests or obligations may still

---

[13]The trial prosecutor's superior, the chief of the appellate division of the district attorney's office, submitted both the Commonwealth's opposition to the second motion and its current brief. Presumably, she was aware of the trial prosecutor's work on the brief in Stote's direct appeal and, as an officer of the court, would not have submitted the trial prosecutor's affidavit in its current form if she believed or knew the facts were other than as stated therein.

give rise to a 'potential' conflict of interest. See *Commonwealth* v. *Soffen*, 379 Mass. 433, 437 (1979) (potential conflict of interest is one where 'a more tenuous conflict appears')." *Commonwealth* v. *Mosher*, 455 Mass. 811, 823 (2010). The relationship between Walsh and the ADA certainly might have given rise to a potential conflict of interest, and should have been disclosed to Stote. See note 11, *supra.* An appellate lawyer in Walsh's position might well disclose confidential information or might otherwise allow his interest in the relationship to impair his professional judgment, for example, by withholding criticism of his intimate companion's colleagues or by failing to raise arguments that he would have pursued but for the relationship. Stote is not entitled to a new appeal, however, unless he establishes " 'material prejudice' to his defense resulting from the alleged conflict." *Commonwealth* v. *Mosher*, *supra*, quoting *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986). Because we evaluate the claim of material prejudice according to the standards for ineffective assistance of counsel, *Croken*, *supra* at 272, this entails a showing "that counsel's performance fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that this performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " *Commonwealth* v. *Lao*, 450 Mass. 215, 221 (2007), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Stote has not made this showing. Stote argues on appeal that, because of Walsh's relationship with the ADA, Walsh failed to argue that he was burdened by a conflict of interest *at trial* arising from his previous intimate relationship with the trial prosecutor, depriving Stote of the effective assistance of appellate counsel. We disagree. First, the judge found that the intimate relationship between Walsh and the trial prosecutor had ended seventeen years before Stote's trial and gave rise to no actual conflict of interest.[14] Second, as to any potential conflict of

---

[14]As noted above, the single justice, as gatekeeper, did not allow Stote to pursue his appeal from the denial of the second motion to the extent that he argued that Walsh's relationship with the trial prosecutor gave rise to a conflict of interest. See note 1, *supra.* We therefore do not consider whether the judge erred in denying a new trial on that basis. Nevertheless, this does not prevent us from considering whether the omission of this alleged conflict from Stote's

interest arising from Walsh's relationship with the trial prosecutor, the judge pointed out that Walsh "had no hesitation whatsoever in lambasting [the trial prosecutor] for her alleged transgressions at trial" and concluded that "Walsh vigorously represented the defendant both at trial and on appeal." Much of our opinion in Stote's direct appeal is devoted to disposing of Walsh's charges concerning the trial prosecutor's conduct of the trial. See *Commonwealth* v. *Stote*, 433 Mass. 19, 22-25, 27-29 (2000) (prosecutor's delay in disclosing potentially exculpatory evidence was not prejudicial; prosecutor did not mishandle evidence of victim's alleged involvement in organized crime).

Stote also argues that Walsh, as his trial counsel, deprived him of effective assistance due to various failures and omissions at trial, such as failing to investigate and develop certain evidence that would have supported Stote's defense. Due to the limited scope of review authorized by the gatekeeper, this claim is properly before us only to the extent that it might establish material prejudice arising from Walsh's relationship with the ADA. See notes 1 and 14, *supra*. Accordingly, to obtain relief on this basis, Stote would have to show not only that the asserted failures at trial constituted ineffective assistance of counsel (that is, that if these asserted failures had been raised in Stote's direct appeal, the conviction would have been reversed), but also that the relationship with the ADA was what prevented Walsh from raising such claims in the direct appeal. See *Commonwealth* v. *Mosher*, *supra* (defendant must show " 'material prejudice' to his defense *resulting from* the alleged conflict" [emphasis added]). Whatever the merits of the former element, Stote cannot establish the latter. Stote offers no reason to believe that, but for the relationship, Walsh would have raised these issues and thereby accused himself of ineffective assistance. Put another way, supposing that Walsh had *not* been involved in a relationship with the ADA or anyone else in the district attorney's office and that he was therefore under *no* potential conflict of

brief caused material prejudice to him in his direct appeal.

On a related point, Walsh's previous relationship with the trial prosecutor was not disclosed to Stote, and Stote attests that if it had been, he would not have had Walsh represent him. The prudent course of action would have been for Walsh to disclose that previous relationship and to give Stote the opportunity to consent or not to consent to the representation. We need not decide, however, whether Walsh was *obligated* to do so under rule 1.7 (b).

interest, he nonetheless would not have argued in the direct appeal that he deprived Stote of effective assistance at trial. In these circumstances, the relationship did not affect the arguments raised in Stote's direct appeal. Stote has not shown that any potential conflict of interest arising from his attorney's relationship with the ADA resulted in any material prejudice to him.

*Conclusion.* We conclude that in the circumstances of this case, there was neither an actual conflict of interest nor a potential conflict that resulted in material prejudice in Stote's appeal. We remind members of the bar of their professional obligation under rule 1.7 (b) to disclose to their clients any intimate personal relationship that might impair their ability to provide untrammeled and unimpaired assistance of counsel. See *Croken, supra* at 273. Even if an attorney reasonably believes that he or she can continue to represent the client vigorously, the attorney should err on the side of caution by disclosing the relevant facts, which need not include the name of the third person, and asking whether the client consents to the representation.[15] This dispute could well have been avoided if Walsh had simply informed Stote of his relationship with a colleague of the prosecutor who sought affirmance of the conviction. Stote would then have had the opportunity either to give *informed* consent to the continued representation or to retain different appellate counsel, as Stote attests he would have done. The order denying Stote's second motion for a new trial is affirmed.

*So ordered.*

---

[15]While the disclosure to the client need not state the name of the person with whom he or she is having or had a relationship, it should provide sufficient information to permit the client to make an *informed* decision such as the third party's employer and nature of employment (e.g., as lawyer, paralegal, administrative assistant), and the likelihood of involvement, if any, of the third party in the case.