NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-791

COMMONWEALTH

vs.

HECTOR A. RAMIREZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of assault and battery by means a dangerous weapon.  He now appeals, arguing that the motion and trial judges improperly denied his counsel's motions to withdraw and that the prosecutor improperly withheld exculpatory evidence. We affirm.

Background.  We recite the facts in the "light most favorable to the Commonwealth," Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for later discussion.

The defendant was incarcerated at the Middleton House of Correction.  On October 5, 2019, Correctional Officer Sergeant James Ridley escorted inmates from their housing unit into the dining hall.  Sergeant Ridley observed the defendant walk over

to another inmate and strike the inmate in the head with a food tray. Video footage from one camera in the dining hall captured the incident and shows the defendant smash the tray twice over the inmate's head. Sergeant Ridley testified that there were four to six cameras in the dining hall. He had not observed any other disturbance in the dining hall prior to seeing the defendant hit the inmate with the food tray. The defendant was then taken down to the ground, placed in handcuffs and brought to the Restrictive Housing Unit.

Investigator John Zaccari was responsible for investigating incidents at the house of correction. He investigated the defendant's altercation by using the digital camera system. He stated that the cameras were working properly on the day of the incident and that the camera server rewrites itself every six months. Investigator Zaccari also testified that there were four cameras in the dining hall. After reviewing footage from all four cameras, he requested only the video footage from one camera to be burned onto a disc because, in his opinion, that footage "was really the best view we had." He testified that Investigator Crowley preserved the video footage from one of the cameras by placing it onto a disc, which was then provided to the district attorney's office. The disc was entered into evidence. Investigator Zaccari did not speak to any inmates or correction officers who were present on the day of the incident.

Another video recording was entered into evidence which showed that sometime earlier, as the inmates were lining up to go into the dining hall, the alleged victim approached the defendant and pointed his finger toward the defendant's face. As the defendant walked away, the victim grabbed the defendant's left arm.

Trial counsel argued in closing that because the jury "only saw one camera angle" from the four cameras operating at the time of the incident, the missing video footage would have given a full picture of what occurred between the defendant and the victim. He also faulted Investigator Zaccari for not speaking to any other correction officers or inmates. Defense counsel argued that the jury should acquit the defendant because he had nowhere to go and was defending himself.

Discussion. The defendant's first argument is that the motion judge improperly denied his counsel's initial motion to withdraw, made several months before the trial date. On December 6, 2021, the defendant moved to discharge his court-appointed attorney. The defendant stated he was unhappy and frustrated because the "video where they [other inmates] are being aggressive towards [him]" no longer existed. Counsel explained, "[the defendant] asked me to get another video from the folks . . . prior to the lunch," and that "after reviewing that video, there was a second video that he asked me to look

3

for.  At the time I got around to this, the video had been erased."

After hearing from trial counsel, the motion judge invited the defendant to address the court regarding his dissatisfaction with trial counsel.  The defendant stated he was frustrated because he "told [his] lawyer exactly what happened" -- that "they [the victim among others] started bothering me, then they followed me to the kitchen" -- and that defense counsel's failure to request the video recordings of the additional camera angles from the dining hall before they were deleted was "the fault of [his] . . . lawyer and the DAs."  The judge explained that the jail video recordings had been destroyed and no lawyer nor the court could recreate the video recordings.  He then provided the defendant choices:  "you go forward and have a trial, but that video that you're talking about isn't going to be part of it, whosever fault that may be.  It's just not part of it . . . we'll give you a trial date and you see what happens.  And then you can choose to have a judge or a jury."

The defendant responded, "Okay, I'll go to trial."  The motion judge and the defendant then discussed his legal representation.  The defendant stated, "It's my right to have another lawyer" and the judge responded, "Well, you can hire another lawyer.  It's not your right to get another lawyer appointed, sir."  The judge then denied the defendant's motion.

4

"Whether a motion for substitution of counsel should be allowed depends on the defendant's demonstrating good cause. Some examples of good cause include counsel's incompetence or failure to prepare a defense, conflict of interest, or a complete breakdown in communication which threatens the defendant's right to a fair trial." Commonwealth v. Moran, 17 Mass. App. Ct. 200, 204 (1983). A change of counsel is left to the discretion of the judge and should "be exercised only after the defendant has been given an adequate opportunity to state his grounds for seeking discharge of counsel." Id. at 204-205.

The defendant's complaints solely concerned the missing video recordings. The defendant expressed no dissatisfaction with his attorney's performance. The judge therefore did not abuse his discretion when he concluded that the defendant had not, "at least as far as I have heard, given me any reason to suggest to me that [trial counsel], who is appointed . . . has not done his job and that a different attorney would benefit [him]."

The defendant also argues that his counsel's second motion to withdraw -- on the morning of trial -- should have been allowed. After the case was called, the defendant not present, trial counsel informed the judge, "I would move to withdraw based on a breakdown in communication between myself and my client." However, when the defendant appeared in court, he

5

asked to speak and said, "I only -- I just want to say I get along fine with him. I don't want to hurt his record as an attorney." The defendant then explained to the trial judge the issues with the missing video recordings.

After some further discussion between the judge and counsel regarding the video recordings, defense counsel, at sidebar in the presence of the defendant, stated,

> "Judge, essentially, talking with my client this morning, it appears that he was giving me somewhat veiled threats against my license, and that sort of leaves me with a question of what confidence does he have in me. Is that sitting in the back of my head at trial, what does that do for the validity and the integrity of the case if he's now moved to withdraw, it's not allowed, and now he's --."

The judge then gave the defendant the opportunity to speak about counsel's asking to withdraw. Once again, the defendant talked about the facts of the case. The judge again questioned the defendant about whether he wanted trial counsel to withdraw, and the defendant responded, "I don't think anything about him withdrawing because then we would have to get another date, then the case would have to be continued." The defendant and the judge further discussed the facts of the case. Trial counsel informed the judge, "And, your Honor, for the record, my motion was -- today was based on the statements regarding my license and how I felt that was -- how that represented his feelings . . . towards this relationship, not so much any

evidentiary issues that have already been taken care of."  The

defendant reiterated his feelings about his lawyer:

> "I told him I have nothing against him. . . .  I told him
> that if the evidence that shows my defense doesn't show up,
> then I will appeal my case.  And when I said that, he
> became nervous and I told him that if he's doing his job
> well done, he has nothing to worry about."

The motion to withdraw was denied and a jury trial was

conducted.

The Supreme Judicial Court recently stated in Commonwealth

v. Dew, 492 Mass. 254, 261 (2023), "It is difficult to overstate

the essential importance of the right to counsel in our

adversary system of criminal justice."  See United States v.

Cronic, 466 U.S. 648, 653 (1984) (accused person's right to

counsel "is a fundamental component of our criminal justice

system").  The procedural and substantive safeguards that define

our criminal justice system are designed to assure that the

accused receives fair proceedings and a fair trial and largely

would be for naught if the accused were left to fend for him- or

herself without the assistance of counsel to navigate and

exercise his or her rights.  Gideon v. Wainwright, 372 U.S. 335,

344-345 (1963).  See Cronic, supra at 653-654 ("Of all the

rights that an accused person has, the right to be represented

by counsel is by far the most pervasive for it affects his

ability to assert any other rights he may have" [quotation

omitted]; counsel's assistance is "the means through which the

7

other rights of the person on trial are secured").  The right to be heard, and even the right to a trial itself, "would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."  Powell v. Alabama, 287 U.S. 45, 69 (1932).  See Cronic, supra at 653 n.8, quoting Powell, supra at 69 (accused person "requires the guiding hand of counsel at every step in the proceedings against him").

Accordingly, "under art. 12, if a defendant establishes an actual conflict of interest, he is entitled to a new trial without a further showing; he need not demonstrate that the conflict adversely affected his lawyer's performance or resulted in actual prejudice."  Commonwealth v. Mosher, 455 Mass. 811, 819 (2010).  See Commonwealth v. Cousin, 478 Mass. 608, 617 (2018) (actual conflict requires no showing of prejudice by defendant because prejudice is inherent); Commonwealth v. Holliday, 450 Mass. 794, 806, cert. denied, 555 U.S. 947 (2008). "An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of . . . counsel is impaired, either by his own interests or by the interests of another client."  Commonwealth v. Stote, 456 Mass. 213, 218 (2010), quoting Commonwealth v. Shraiar, 397 Mass. 16, 20 (1986).  The defendant must marshal "sufficient, concrete evidence" of an attorney's divided loyalty to carry "the burden

of proving both the existence and precise character of the alleged conflict of interest."  Cousin, supra at 617-618.

Counsel's concern that the defendant might report him to the Board of Bar Overseers (BBO) did not create an actual conflict requiring a new trial.  Even where a defendant in fact contacted the BBO following a breakdown in communication with his attorney, the Supreme Judicial Court concluded that the representation was "not burdened by any actual conflict" because the attorney's advocacy remained manifestly zealous. Commonwealth v. Fernandes, 485 Mass. 172, 196 (2020), cert. denied, 141 S. Ct. 1111 (2021).  See State v. Reddick, 230 Neb. 218, 222 (1988) (defendant's complaints did not create a conflict of interest because they would more likely encourage the attorney to provide "the very best defense" matching the defendant's interests); State v. Sinclair, 46 Wash. App. 433, 437 (1986) (concluding that defendant's formal complaint against lawyer did not create an actual conflict).

Here, the defendant's dispute with trial counsel was less pronounced because, at most, the defendant threatened to file a BBO complaint against trial counsel.  And because the attorney characterized the remark as a "veiled threat" the record is unclear as to what exactly the defendant threatened to do, whether he meant it, or what he wished to accomplish.  The defendant also explained on several occasions that the focal

9

point of his frustration lay with the deleted video recordings and not with other aspects of his legal representation.  He further emphasized that he didn't "want to hurt [trial counsel's] record as an attorney."

Even had a formal complaint been filed, we would still look at whether there was an "actual conflict," Fernandes, 485 Mass. at 195, and here the defendant's "veiled threat" did not cause trial counsel's interests to conflict with the defendant's interests.  Thus, we conclude that the trial judge did not abuse his discretion when he denied trial counsel's motion to withdraw.

Finally, the defendant argues that that the Commonwealth violated its obligations to disclose and produce video footage from other camera angles which allegedly might have produced evidence favorable to his self-defense claim.  "To obtain a new trial on the basis of nondisclosed exculpatory evidence, a defendant must establish (1) that the evidence [was] in the possession, custody, or control of the prosecutor or a person subject to the prosecutor's control, (2) that the evidence is exculpatory, and (3) prejudice [quotations omitted]." Commonwealth v. Caldwell, 487 Mass. 370, 375 (2021). "Exculpatory evidence is that evidence which tends to negate the guilt of the accused . . . or, stated affirmatively, supporting the innocence of the defendant [quotations omitted]."

10

Commonwealth v. Pisa, 372 Mass. 590, 595, cert. denied, 434 U.S. 869 (1977).

The defendant has failed to meet his burden to show that the missing video recordings would tend to exculpate him. Evidence was presented that showed that the victim was antagonistic towards him prior to entering the dining hall. The defendant suggests that the missing video evidence would support his self-defense argument by showing that a similar interaction also occurred in the dining hall. However, because no witness testimony established that the victim and defendant had any physical altercation within the dining hall, we have no basis for concluding that the missing video recordings would have displayed such an altercation. And even had the video recordings shown what the defendant suggested, such an altercation would have fallen well short of supporting a self-defense claim because, by the time the defendant attacked the victim, any previous quarrel had subsided, and the victim was not attacking the defendant.

Conversely, a correctional guard testified, consistent with the video recording that was in evidence, that the defendant approached the victim from behind and hit him over the head with the food tray. This guard did not testify that he saw the victim do anything other than sit at his dining table. We therefore conclude that the failure to preserve the alternate

dining hall video recordings from being automatically deleted did not violate the defendant's due process rights.

Judgment affirmed.

By the Court (Meade,
  Hershfang & D'Angelo, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  October 2, 2023.

---

[1] The panelists are listed in order of seniority.